**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Matthew LaMONTE, Jr., Appellant.**

Superior Court of Pennsylvania.

Submitted March 8, 2004.

Filed Sept. 20, 2004.

John R. Fagan, Doylestown, for appellant.

James D. Blumenthal, Asst. Dist. Atty., Doylestown, for Com., appellee.

BEFORE: HUDOCK, McCAFFERY, and POPOVICH, JJ.

OPINION BY McCAFFERY, J.:

¶ 1 After a conversation with a police officer, Appellant, Matthew LaMonte, Jr., consented to a search of his person which revealed that he was carrying a pipe containing cocaine residue. On appeal, Appellant asks us to determine whether the fruits of that search should have been suppressed. Appellant contends that the initial detention was illegal and that it tainted the subsequent search, rendering it involuntary. We hold that the initial detention was a proper investigative detention and that Appellant's consent to the subsequent search was voluntary. Accordingly, we affirm the order denying Appellant's motion to suppress.

¶ 2 The facts and procedural history of this case, summarized from the trial court opinion, are as follows. At approximately 8 p.m. on November 9, 2002, Officer Coffman of the Falls Township Police Depart-

ment was in uniform on routine car patrol in the area of the Friendly Mart on 1180 Bristol Pike. He observed four individuals in the parking lot of the Friendly Mart, which was closed at that hour. He watched three of the individuals walk from a car to the side of the building.

¶ 3 At this point, Officer Coffman pulled into a nearby parking lot and continued to watch them. In his experience as a Falls Township police officer, he knew this to be a high crime area, rife with burglaries and narcotics transactions. Officer Coffman radioed for back-up, and Officer Fortunato responded. The officers drove their police cars to different locations and continued to monitor the individuals. While the officers watched, the individuals returned to the car, huddled around it, and then Appellant and one other man walked back to the building. Shortly thereafter, the other individuals walked away from the car. Based on their knowledge and experience in law enforcement, the officers believed that they had witnessed a narcotics transaction, and proceeded directly to the Friendly Mart parking lot to investigate.

¶ 4 Once in the parking lot, Officer Coffman posed a general question to the assembled males: "What are you guys doing?", and asked if he could speak with them. Appellant volunteered. Officer Coffman asked Appellant for his name, which Appellant provided, along with a date of birth and social security number.[1] Officer Coffman noticed that while he was questioning Appellant, Appellant kept fidgeting with his belt and groin area as if to conceal something. Officer Coffman then walked away from Appellant and spoke with Officer Fortunato about the individuals. Officer Fortunato said he knew several of them and that they had been involved with burglaries, narcotics and weapons. Officer Coffman walked back over to Ap-

pellant and asked if he could pat him down. Appellant agreed. The officer recovered two pipes, scissors and a piece of wire from Appellant's pockets. Subsequent laboratory testing revealed that at least one of the pipes contained cocaine residue.

¶ 5 Appellant was arrested and charged with the offenses specified *supra.* He filed a timely motion to suppress which the Honorable Ward F. Clark denied after a hearing.

¶ 6 After the denial of his suppression motion, Appellant and the Commonwealth proceeded with a stipulated trial. Based on the evidence presented by the Commonwealth and stipulated to by Appellant, Judge Clark found Appellant guilty on all charges. Appellant was sentenced to a total of four years' probation. On September 11, 2003, Appellant filed a timely notice of appeal challenging the trial court's denial of his motion to suppress, and raises the following issues for our review:

A. WHETHER THE LOWER COURT ERRED IN DENYING THE APPELLANT'S MOTION TO SUPPRESS BASED UPON ITS CONCLUSION THAT THE INTERACTION BETWEEN OFFICER COFFMAN AND THE APPELLANT WAS A MERE ENCOUNTER, THUS NOT REQUIRING ANY LEVEL OF SUSPICION ON THE PART OF THE OFFICER?

B. WHETHER THE INVESTIGATIVE DETENTION BETWEEN OFFICER COFFMAN AND THE APPELLANT WAS SUPPORTED BY REASONABLE, ARTICULABLE SUSPCIION [SIC] OF CRIMINAL ACTIVITY?

---

1. This information later proved to be false.

C. WHETHER THE APPELLANT WAS SUBJECTED TO AN ILLEGAL DETENTION AT THE TIME HE GRANTED OFFICER COFFMAN CONSENT TO CONDUCT A PAT–DOWN FRISK OF HIS PERSON?

(Appellant's Brief at 4).

¶ 7 When reviewing a denial of a motion to suppress, we are mindful of the following:

> Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Since the prosecution prevailed in the suppression court, we may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the factual findings of the trial court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

*Commonwealth v. Bomar*, 573 Pa. 426, 826 A.2d 831, 842 (2003) (citations omitted), *cert. denied*, 540 U.S. 1115, 124 S.Ct. 1053, 157 L.Ed.2d 906 (2004).

¶ 8 We have carefully reviewed the record and conclude that it supports the factual findings of the trial court. See Notes of Testimony (N.T.), dated August 26, 2003, at 43–50. Our focus therefore shifts to the propriety of the legal conclusions drawn from those facts by the trial court.

¶ 9 All of Appellant's challenges present essentially the same argument, i.e. that Appellant was subjected to an initial illegal investigative detention by Officer Coffman and that the fruits of the subsequent pat down should have been suppressed because it was not voluntary. For the following reasons, we disagree.

¶ 10 Where, as in the case *sub judice*, there is a factual finding of a consensual search [2], our analysis of the legal propriety of this decision is two-pronged. *Commonwealth v. Strickler*, 563 Pa. 47, 56–57, 757 A.2d 884, 888–889 (2000):

> The central Fourth Amendment inquiries in consent cases entail assessment of the constitutional validity of the citizen/police encounter giving rise to the consent; and, ultimately, the voluntariness of consent. Where the underlying encounter is found to be lawful, voluntariness becomes the exclusive focus. Where, however, a consensual search has been preceded by an unlawful seizure, the exclusionary rule requires suppression of the evidence obtained absent a demonstration by the government both of a sufficient break in the causal chain between the illegality and the seizure of evidence, thus assuring that the search is not an exploitation of the prior illegality, and of voluntariness.

*Id.* (citations omitted).

¶ 11 The threshold inquiry in determining the lawfulness of encounters between citizens and the police is whether or not the subject has been seized. *Id.*

> Valid citizen/police interactions which constitute seizures generally fall within two categories, distinguished according to the degree of restraint upon a citizen's liberty: the investigative detention or *Terry* [3] stop, which subjects an individual to a stop and a period of detention but is not so coercive as to constitute the functional equivalent of

---

**2.** *See* Supplemental Trial Court Opinion, dated January 6, 2004, at 1.

**3.** *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

an arrest; and a custodial detention or arrest, the more restrictive form of permissible encounters. To maintain constitutional validity, an investigative detention must be supported by a reasonable and articulable suspicion that the person seized is engaged in criminal activity and may continue only so long as is necessary to confirm or dispel such suspicion; whereas, a custodial detention is legal only if based on probable cause. To guide the crucial inquiry as to whether or not a seizure has been effected, the United States Supreme Court has devised an objective test entailing a determination of whether, in view of all surrounding circumstances, a reasonable person would have believed that he was free to leave. In evaluating the circumstances, the focus is directed toward whether, by means of physical force or show of authority, the citizen-subject's movement has in some way been restrained. In making this determination, courts must apply the totality-of-the-circumstances approach, with no single factor dictating the ultimate conclusion as to whether a seizure has occurred.

*Id.* at 57–59, 757 A.2d at 889–890 (citations omitted).

¶ 12 In this case, the trial court found that the initial detention was a valid investigative detention based on a reasonable, articulable suspicion that Appellant and his cohorts were engaged in illegal narcotics activity. *See* Trial Court Opinion, dated November 13, 2003 (incorporating N.T., 8/26/03, 43–50). We agree.

■■■ ¶ 13 Appellant was with a group of people, at night, in the parking lot of a closed convenience store. N.T., 8/26/03, at 6–7. Based upon his experience as a police officer in this township, Officer Coffman testified that he knew this was a high crime area with frequent burglaries and narcotics transactions. *Id.* at 7–8, 47. Officer Coffman observed Appellant and the other individuals from two different vantage points, and noted that they were huddling by a car and then walking away to the side of the store in smaller numbers and then returning to the car. He called for another officer and then conferred with him about the individuals under observation. Based on both their experience as police officers and their particularized experience in this locale, the officers had a reasonable basis to suspect that Appellant and the others were engaged in illegal narcotics transactions. *Id.* at 10, 47.

■■■ ¶ 14 Because we have concluded that the initial stop of Appellant was constitutionally valid, the voluntariness of the subsequent search becomes our exclusive focus. *See Strickler,* 563 Pa. at 56–57, 757 A.2d at 888–889; *Commonwealth v. Acosta,* 815 A.2d 1078, 1083 (Pa.Super.2003). Our Supreme Court has adopted a "totality of circumstances" test by which to assess the validity of consensual searches following valid stops, and has specifically stated that such searches are not *ipso facto* coercive. *Strickler, supra.* "To establish a voluntary consensual search, the Commonwealth must prove that a consent is the product of an essentially free and unconstrained choice—not the result of duress or coercion, express or implied, or a will overborne—under the totality of the circumstances." *Acosta, supra.*[4]

4. The following is a non-exclusive list of factors which may be considered in assessing the legality of a consensual search:
  (1) the presence or absence of police excesses;

  (2) physical contact or police direction of the subject's movements;
  (3) the demeanor of the police officer;
  (4) the location of the encounter;

¶ 15 The facts as found by the suppression court reflect no police excesses. In fact, the police were out-numbered, four to two. N.T., 8/26/03, at 16–17, 43. Prior to the consensual search, the officers observed the individuals for some period of time before approaching them. *Id.* at 43–44, 47. The officers did not physically or verbally direct any of the movements of the individuals present. *Id.* at 44–45, 47. The encounter occurred in the early evening, in an open parking lot, along a highway and in the presence of three other civilians. *Id.* at 6–7, 43, 47. The demeanor of the officers was polite and respectful at all times. *Id.* at 44–45, 47–48. First, Officer Coffman greeted the four men and asked if he could speak with them. *Id.* Appellant volunteered to speak with the officer by saying "Yes", after which Officer Coffman addressed Appellant in a respectful manner. *Id.* At that time, Appellant (then 30 years of age) was calm, sophisticated and sufficiently self-possessed to provide Officer Coffman with a false name, birth date and social security number. *Id.* at 48. Then, after Officer Coffman observed that Appellant appeared to be trying to conceal something on his person, Officer Coffman left Appellant alone and walked away to confer with Officer Fortunato. *Id.* at 45. Although Appellant was not specifically told that he could leave or that he must stay, the fact that Officer Coffman walked away from Appellant and engaged in a somewhat lengthy conversation with Officer Fortunato clearly demonstrates that there was a break in the encounter between Appellant and the officer. Finally, Officer Coffman walked back over to Appellant and politely asked if he could pat Appellant down. *Id.*

¶ 16 Based upon the foregoing, we have determined that Appellant's consent to the search of his person was the product of an essentially free and unconstrained choice. *See Acosta, supra.* We base our decision on the trial court's factual findings, and on the age and sophistication of Appellant. Accordingly, under the totality of the circumstances, we conclude that the suppression court was correct in finding that Appellant voluntarily consented to the search of his person and thus properly denied Appellant's motion to suppress.

¶ 17 Judgment of sentence affirmed.

(5) the manner of expression used by the officer in addressing the subject;

(6) the content of the interrogatories or statements;

(7) whether the subject was told that he or she was free to leave; and

(8) the maturity, sophistication and mental or emotional state of the defendant (including age, intelligence and capacity to exercise free will).

*Strickler,* 563 Pa. at 72–73, 79, 757 A.2d at 897–898, 901.