**COMMONWEALTH of Pennsylvania,
Appellee**

v.

**Kenneth VAN WINKLE, Appellant.**

Superior Court of Pennsylvania.

Argued Dec. 8, 2004.

Filed Aug. 8, 2005.

John K. Kerrigan, Jr., Langhorne, for appellant.

Stephen B. Harris, Assistant District Attorney, Warrington, for Commonwealth, appellee.

Before: BOWES, McCAFFERY, JJ., and McEWEN, P.J.E.

OPINION BY BOWES, J.:

¶ 1 Kenneth Van Winkle appeals from the June 25, 2004 judgment of sentence of three to six years imprisonment that was imposed after he was convicted at a nonjury trial of two counts of possession of a controlled substance and one count each of possession with intent to deliver and possession of drug paraphernalia. We affirm.

¶ 2 We examine the facts found by the suppression court, as announced from the bench at the conclusion of the suppression hearing. On November 9, 2003, at approximately 9:55 p.m., on-duty Bensalem Township Police Officer Stephen Clark noticed a Ford Taurus on Street Road in Bucks County. Appellant was a passenger in the Ford Taurus, which was being operated by Jonathan Diaz. Officer Clark followed Mr. Diaz's vehicle for a brief period before initiating a traffic stop, and Mr. Diaz quickly pulled to the side of the road. Prior to initiating the traffic stop, Officer Clark had processed the vehicle's license plate utilizing Pennsylvania Department of Transportation records that he accessed with a computer terminal in his police car. Those records revealed that the license plate attached to Mr. Diaz's vehicle was registered to a different vehicle.

¶ 3 After initiating the traffic stop and approaching Mr. Diaz's vehicle, Officer Clark immediately recognized the odor of marijuana emanating from the vehicle and observed Appellant sitting in the passenger side with his left hand cupped against the left side of his leg. Officer Clark could not determine what Appellant was holding. At some point, Officer Clark asked Mr. Diaz to exit the vehicle and walk back to the police vehicle to wait for additional officers to arrive. While standing near the police vehicle, Officer Clark and Mr. Diaz discussed the discrepancy with the vehicle's registration, the counterfeit insurance card that Mr. Diaz possessed, and Mr. Diaz's admission to smoking marijuana earlier in the day. Mr. Diaz was not placed in handcuffs during this conversation; in fact, Mr. Diaz was not handcuffed until after Officer Clark discovered contraband under the passenger seat of Mr. Diaz's vehicle.

¶ 4 After two police officers arrived to assist in the interdiction, Officer Clark approached Appellant, who remained in the passenger seat of Mr. Diaz's vehicle. Officer Clark again observed that Appellant, who was expressionless and unresponsive to questions, had cupped an object in his left hand. The officer was able to detect that the object was a plastic bag that contained smaller plastic bags. After Appellant refused to tell Officer Clark what he was holding, Officer Clark ordered him from the vehicle. Officer Clark watched as Appellant furtively leaned forward and secreted an object under the passenger seat as he exited the vehicle. Officer Clark frisked Appellant for weapons, discovered $3,385.00 in his pants pockets, and directed him to stand with the two officers who had remained with Mr. Diaz. At this point, Officer Clark proceeded to search the vehicle and discovered approximately thirty grams of cocaine and a small amount of marijuana under the passenger seat. Af-

ter the contraband was discovered, police handcuffed Mr. Diaz and Appellant and transported them to the police station.

¶ 5 Appellant was arrested and convicted of the aforementioned offenses. This appeal followed, wherein Appellant raises the following issues:

Whether the officer lacked probable cause to believe the vehicle was in violation of the Motor Vehicle Code if the officer lacked sufficient time to check the license number before initiating the traffic stop and did not observe any motor vehicle violations before the stop.

Whether evidence discovered, [sic] following a seizure of the appellant's person should be suppressed if the officer's reason for conducting the seizure was the appellant's furtive movements.

Whether the officer exceeded the scope of a Terry pat down by searching the appellant's pockets knowing that appellant did not possess a weapon and if so, should the fruits of that search be suppressed?

Whether evidence discovered during a warrantless search of a vehicle should have been suppressed when the search was conducted after the occupants of the vehicle were in police custody and no exigent circumstances existed ... to conduct a warrantless search ...?

Appellant's brief at 4.

Our standard of review in addressing a challenge to a trial court's denial of a motion to suppress is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. *Commonwealth v. LaMonte*, 859 A.2d 495, 499 (Pa.Super.2004). Because the prosecution prevailed in the suppression court, we may consider only the evidence of the prosecution and so much of the evidence for

the defense as remains uncontradicted when read in the context of the record as a whole. *LaMonte*, 859 A.2d at 499. Where the record supports the factual findings of the suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn from them are in error. *Id.*

*Commonwealth v. Bell*, 871 A.2d 267, 271 (Pa.Super.2005).

■ ¶ 6 First, Appellant challenges the trial court's finding that Officer Clark had probable cause to believe that Mr. Diaz violated the Motor Vehicle Code. According to Appellant, the record demonstrates that Officer Clark did not know that the vehicle displayed an incorrect license plate until after he initiated the stop. Appellant argues that Officer Clark lacked sufficient time prior to the traffic stop to contact the Pennsylvania Department of Transportation and check the vehicle's license number. Instead, Appellant posits that Officer Clark did not receive the relevant information until he processed Mr. Diaz's license and registration after approaching Mr. Diaz's vehicle. We disagree.

¶ 7 The record supports the trial court's finding that Officer Clark stopped Mr. Diaz's vehicle after forming a probable-cause belief that the vehicle was licensed illegally. During the suppression hearing, Officer Clark testified unequivocally that **prior** to initiating the traffic stop, he processed the vehicle's license plates utilizing Pennsylvania Department of Transportation records that he accessed using a computer terminal in his police car. He then determined that the license plate attached to Mr. Diaz's vehicle was registered to a different vehicle.

¶ 8 We observe that in addressing this issue, the trial court misinterpreted Mr. Diaz's testimony relating to the course of events following the initial traffic stop. Specifically, the court interpreted Mr.

Diaz's testimony as corroborating Officer Clark's account of the interdiction. However, contrary to the trial court's findings, Mr. Diaz did not testify that Officer Clark addressed Mr. Diaz's faulty vehicle registration immediately upon approaching the vehicle. Instead, Mr. Diaz testified that Officer Clark informed him that the registration was improper only **after** he had returned from taking the registration documentation back to the police vehicle. Although we must reject the court's findings of fact relating to that testimony, we nevertheless affirm the trial court's probable cause determination. *See Commonwealth v. Bell*, 2005 PA Super 101, 871 A.2d 267 (*en banc*) (although record did not support all of trial court's findings, we are bound by findings that record did support). In light of the fact that the trial court credited Officer Clark's testimony in its entirety, we believe that the court would have accepted Officer Clark's testimony even if it was aware that Mr. Diaz's testimony did not bolster Officer Clark's account. Accordingly, we hold that the record supports the trial court's probable cause determination notwithstanding the court's reliance upon its misapprehension of Mr. Diaz's testimony.

■ ¶ 9 Next, we address Appellant's contention that exigent circumstances did not exist to support Officer Clark's warrantless search of Mr. Diaz's vehicle. Appellant argues that he and Mr. Diaz were in custody at the time the search occurred, and therefore, no risk existed that the pair could pose a threat to the officers or destroy any evidence contained in the vehicle.

¶ 10 For the following reasons, we conclude that exigent circumstances existed to conduct a warrantless search of Mr. Diaz's vehicle. We have held that exigent circumstances support a warrantless vehicle search where prompt police action is im-

perative either because the evidence was likely to be destroyed or because a threat existed of physical harm to police officers or other innocent individuals. *Commonwealth v. Casanova*, 748 A.2d 207 (Pa.Super.2000).

¶ 11 This issue concerns whether Mr. Diaz had been arrested before Officer Clark searched the vehicle. If Mr. Diaz was in formal custody at that juncture, exigent circumstances would not exist because the police would have had sufficient opportunity to obtain a search warrant. However, if Mr. Diaz was not in custody during the relevant period, an exigent circumstance would exist in that after receiving the traffic citation, Mr. Diaz could have left the scene and potentially destroyed any incriminating evidence.

¶ 12 The determination of whether Mr. Diaz was in custody depends on the totality of the circumstances surrounding the interdiction. *Commonwealth v. Dupre*, 866 A.2d 1089, 1106 (Pa.Super.2005) (person in custody when physically deprived of freedom in any significant way or placed in situation in which he reasonably believes that freedom of action or movement is restricted by interrogation).

> Among the factors the court utilizes in determining, under the totality of the circumstances, whether police detention became so coercive as to constitute the functional equivalent of arrest are: the basis for the detention; the location; whether the suspect was transported against his will; how far, and why; whether restraints were used; the show, threat, or use of force; and the methods of investigation used to confirm or dispel suspicions.

*Id.* (quoting *Commonwealth v. DiStefano*, 782 A.2d 574, 579–80 (Pa.Super.2001)).

¶ 13 As noted by the foregoing recitation of the trial court's findings of fact, the police did not place Mr. Diaz into custody until after the contraband was discovered in his vehicle. Accordingly, the record belies Appellant's position that an exigent circumstance did not exist. In fact, the police only placed Mr. Diaz into custody because they discovered Appellant's contraband. Initially, Officer Clark was merely going to detain Mr. Diaz pending the issuance of a traffic citation. Officer Clark testified in relation to this issue as follows:

> Q. Was Mr. Diaz under arrest at that time?
>
> [Officer Clark]. No.
>
> Q. Was he free to leave?
>
> [Officer Clark]. I—he was going to be issued a citation. He was not free to leave at that time, because he was going to be issued a traffic citation.

N.T. Suppression Hearing, 5/5/04, at 15. The trial court recognized this fact stating,

> Mr. Diaz, in fact, was only issued a citation for possessing a counterfeit insurance card. And it is my belief that Officer Clark could have—issued a much more serious criminal violation against Mr. Diaz. But Officer Clark, nonetheless, decided not to do that. And, in fact, indicated that Mr. Diaz was not under arrest at any time and, presumably, he [would have been] permitted to go free after he was issued a citation.

*Id.* at 96. Hence, although police eventually transported Mr. Diaz to the police station, this occurred **after** they discovered contraband in his vehicle and arrested Appellant for the drug offenses stemming from that discovery.

¶ 14 As the record demonstrates that Mr. Diaz was not placed into custody until after the police searched his vehicle, we conclude that exigent circumstances existed for the search. Otherwise, once Mr. Diaz received his traffic citation, he could

have driven the vehicle from the scene before the police obtained a search warrant.

■ ¶ 15 Next, we address Appellant's claim that Officer Clark did not have reasonable suspicion to ask Appellant to alight from the vehicle to conduct an investigative detention. For the following reasons, this claim lacks merit.

■ ¶ 16 As a matter of precaution, a police officer is entitled to ask occupants of a vehicle to step from the vehicle during a traffic stop. *Commonwealth v. Freeman,* 563 Pa. 82, 757 A.2d 903 (2000) (citing *Pennsylvania v. Mimms,* 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977)). Hence, Officer Clark did not need any level of suspicion to ask either Appellant or Mr. Diaz to alight from the vehicle. Indeed, apparently recognizing the shortcomings of his argument, Appellant asserts the traffic stop had concluded before he asked Appellant to exit the vehicle. According to Appellant, the initial traffic stop ended when Officer Clark concluded his conversation with Mr. Diaz and informed him that he was going to receive a citation for the registration violation. Again, we disagree.

¶ 17 Generally, a traffic stop concludes after the officer addresses the motor vehicle violation. *See Commonwealth v. Freeman,* 563 Pa. 82, 757 A.2d 903 (2000) (once officer accomplished purpose of the stop, defendant was within right to drive away); *Commonwealth v. By,* 812 A.2d 1250 (Pa.Super.2002) (where purpose of initial traffic stop ends and reasonable person does not feel reasonably free to leave, subsequent round of questioning by police is investigative detention). Herein, Officer Clark had not yet issued a motor vehicle citation to Mr. Diaz before leaving him with the back-up police officers and approaching Appellant. Since the motor vehicle violation had not been resolved at that juncture, we conclude that the traffic stop was ongoing when Officer Clark asked Appellant to exit the vehicle.

■ ¶ 18 Finally, we address Appellant's argument that Officer Clark's patdown search of his person exceeded the permissible scope of a weapons frisk pursuant to *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and the currency discovered as result of the search should be suppressed as the fruit of an illegal search. Appellant contends that the record demonstrates that Officer Clark's pat down was tantamount to an evidentiary search. Specifically, Appellant asserts that after Officer Clark felt a bulge in Appellant's pocket and confirmed that the bulge was a roll of currency, he continued to search Appellant, seizing the object to determine if there was contraband secreted inside the money.

¶ 19 In confronting this issue, the trial court concluded that Officer Clark was justified in seizing Appellant's money as a search incident to arrest. However, we observe that since Officer Clark testified that he conducted the frisk **before** he discovered the contraband that Appellant hid in Mr. Diaz's vehicle, the record does not support this conclusion. Nevertheless, mindful that the contraband validly was seized from Mr. Diaz's vehicle and that the currency would have been discovered on Appellant's person incident to his arrest based on that seizure, we conclude that the currency falls within the inevitable-discovery exception. *Commonwealth v. Ingram,* 814 A.2d 264 (Pa.Super.2002) (evidence that would inevitably have been discovered was admissible despite *Miranda* violations). Therefore, on this basis, we affirm the trial court's decision to admit evidence of the currency during trial. *See Commonwealth v. Voss,* 838 A.2d 795 (Pa.Su-

per.2003) (Superior Court may affirm lower court's decision on any ground).

¶ 20 Judgment of sentence affirmed.

¶ 21 P.J.E. McEWEN files a Dissenting Opinion.

### DISSENTING OPINION BY McEWEN, P.J.E.:

¶ 1 While the majority expression reveals a careful analysis and presents a perceptive expression of rationale for its decision to affirm the ruling of the trial court, I am obliged to dissent.

¶ 2 This case had its genesis in a traffic stop that occurred on November 9, 2003, at approximately 10:00 p.m., when Officer Stephen Clark of the Bensalem Township Police pulled over a 1996 Ford Taurus on Street Road in Bucks County, Pennsylvania. Appellant was a passenger in the Ford Taurus that was being driven by Jonathon Diaz. When Officer Clark approached the driver's side window, Diaz rolled down his window, and Officer Clark detected the odor of burnt marijuana. He then asked Diaz for his license and vehicle registration. Officer Clark returned to his vehicle, spoke with the driver, and asked him to exit his vehicle.[1] Appellant was not asked to exit the vehicle but remained in the front passenger seat of the vehicle, with, according to Officer Clark, his hand "cupped" next to his leg as if he was holding something. When Diaz exited the vehicle he accompanied Officer Clark to the rear of the vehicle and answered questions. Diaz admitted to Officer Clark that he had smoked marijuana earlier in the day, but claimed he was not carrying marijuana, and also told Officer Clark that appellant was an acquaintance whose car had broken down and to whom he was giving a ride. During Officer Clark's discussion with Diaz it was determined that Diaz had a fraudulent insurance card, and in fact had no insurance on the vehicle.

¶ 3 Eventually, additional officers arrived on the scene, at which time Officer Clark entrusted Diaz to their supervision, and then proceeded to speak to appellant. Appellant was still in the car when the questioning began and, according to Officer Clark, still maintaining his cupped hand against his leg. When appellant did not respond to Officer Clark's questions about what was in his hand, Officer Clark ordered appellant out of the car. As he emerged from the vehicle, appellant attempted to place the contents of his hand under the front seat.

¶ 4 Once appellant was out of the vehicle, Officer Clark went into the vehicle, searched under the front seat and retrieved a green vial and a plastic bag. Subsequent testing established that the green vial contained approximately nine tenths of a gram of marijuana, and the plastic bag contained approximately 31 grams of cocaine pre-packaged in smaller plastic bags. A search of appellant's person uncovered a "bulge" of currency, which totaled $3,385.00. Appellant and Diaz were then arrested.[2]

---

1. At some point, between the time of the stop of the vehicle and the moment when Officer Clark ordered Diaz out of the vehicle, Officer Clark informed Diaz that the license plate that was affixed to the vehicle did not match the registration for the car, and that this discrepancy was the reason for the traffic stop. As will be discussed hereafter, exactly when Officer Clark learned of the discrepancy was the crux of appellant's motion for suppression. The Majority, however, preemp-

tively answers this question in its statement of the facts, when it places the time of Officer Clark's acquisition of such knowledge as "[p]rior to initiating the traffic stop." *Commonwealth v. VanWinkle*, 880 A.2d 1280, 1281 (Pa.Super.2005).

2. Although appellant was arrested, and thereafter prosecuted for drug offenses, Mr. Diaz was released from the police station after the police issued to him a citation for driving

¶ 5 Appellant filed a motion to suppress the evidence seized in the stop, which was denied following an evidentiary hearing. A nonjury trial ensued, and appellant was found guilty of the above referenced crimes. When appellant was thereafter sentenced to serve a term of imprisonment of from three years to six years, this appeal followed.

¶ 6 Appellant first claims that the police officer had no valid basis upon which to stop the vehicle in which he was traveling, and that, therefore, all evidence obtained as a result of this stop should have been suppressed. The trial court held that the stop was justified based upon Officer Clark's belief that the vehicle was bearing an illegal license plate. Although all agree that this factor would have justified such a stop *had Officer Clark actually had knowledge of the discrepancy at the time of the stop*,[3] appellant contends that Officer Clark did not—indeed could not—know of the fact that the license plate did not match the vehicle[4] until *after* he had initiated the stop, and until *after* he had an opportunity to process through the Pennsylvania Department of Transportation database the information he had received from the driver. Thus, appellant argues that there is no evidentiary basis for the finding of the trial court that Officer Clark knew about this discrepancy prior to initiating the stop of the vehicle.[5]

¶ 7 The trial court, at the conclusion of the suppression hearing, rendered findings of facts in accordance with Pa.R.Crim.P. 581(I),[6] and, on the critical issue of justification, rendered the following "findings":

... I do find that [prior to the vehicle stop] Officer Clark, in fact, had reason to believe that the license plate was not the same plate issued to this vehicle ... Officer Clark testified that he provided [the relevant] information to PENNDOT through a computer which is in his car which operates on a Verizon Internet line, which is supported by satellite. And that although sometimes the response is not very quick, that on the evening in question, the response was instantaneous, giving him reason to believe that, as I have indicated, the tag and the car did not match. And that was the reason for his stop.

The issue of whether or not that Internet connection was made was raised by the defense. *And perhaps the biggest factor that I considered with regard to*

---

with a fraudulent insurance card. *See:* N.T. May 5, 2004, p. 98.

3. *See:* 75 Pa.C.S. § 6308(b), *Commonwealth v. Slonaker,* 795 A.2d 397, 400 (Pa.Super.2002), *appeal denied,* 571 Pa. 706, 812 A.2d 1229 (2002).

4. The license plate on the Ford Taurus in which appellant was riding had originally been issued to a Toyota under Mr. Diaz' name. Diaz explained to Officer Clark that he had recently purchased the Ford Taurus and transferred the tag thereto. Diaz produced the appropriate PennDot "pink sheet" to verify the new registration.

5. It bears mention that the Commonwealth in its brief does not respond to appellant's claim that the officer's justification for stopping the vehicle occurred subsequent in time to the

actual stop of the vehicle. Rather, the prosecution merely recites the obvious fact that a vehicle licensing violation is a violation of the Motor Vehicle Code that would have justified a stop. The issue before the suppression court, however, was whether this information was in fact within the knowledge of Officer Clark *before* he actually stopped the vehicle.

6. Although the trial court filed a statement in accordance with Pa.R.A.P.1925(a), the "findings of fact" contained in this statement were compiled "without the benefit of the Notes of Testimony." Trial Court Opinion, p. 2 n. 2. Thus, in my view, the findings that were announced from the bench in accordance with Pa.R.Crim.P. 581(I), more reliably reflect the trial judge's evaluation of the evidence.

*that testimony by Officer Clark, was testimony offered by Mr. Diaz. Mr. Diaz credibly testified that when he was—when he was stopped by Officer Clark, he was told by Officer Clark that he was being stopped because the vehicle and the tag did not match. For Mr. Diaz to offer that credible testimony, he must have received it obviously at the time from Officer Clark. And since it was essentially the first words out of Officer Clark's mouth other than to provide documentation for the vehicle, I find it credible that Officer Clark, in fact, had that information on which he based his stop of the vehicle.*

N.T. May 5, 2004, pp. 91–92. However, appellant convincingly argues that the characterization of Diaz' testimony by the trial court is inaccurate, and hence the "biggest factor" in support of the judge's finding on this issue is not borne out by the record. Appellant's argument is grounded in the following excerpt of Mr. Diaz' testimony:

THE COURT: Now, this is—before you finish, let me go over the initial conversation you had with the officer.

When he pulled up to you, what was the first thing he said to you?

[DIAZ]: License and registration.

THE COURT: License and registration?

[DIAZ]: Uh-huh.

. . .

THE COURT: And what was the—after the officer asks for license, registration-

[DIAZ]: Uh-huh

THE COURT:—did you produce that at the window.

[DIAZ]: Yeah. Right out (indicating).

THE COURT: And did he stay at the window while you were talking to him?

[DIAZ]: No. After that when he grabbed my work, I think he walked back to his car.

THE COURT: So when he got the license, registration, he walked back to his police car?

[DIAZ]: I believe so. Like I guess, run my license or see if it was good.

THE COURT: And when he came back to you, how much time had passed? Was it like real fast? Was it a minute? Five minutes?

[DIAZ]: I can't remember. I'm sorry. Like right there.

THE COURT: That's all right. . . . *When he came back up to you what did he say next to you?*

[DIAZ]: *He said these plates are to a Toyota.* I think—I don't know if that was one of the first things that he said, but that he was saying you know, I pulled you over because these plates belong to a Toyota. And I was telling him, yeah, that is my old car. I think—I don't know what he said after that, but I know soon after he told me can I step to the back of the car [sic].

N.T. May 5, 2004, pp. 72–75 (emphasis supplied). Thus, Mr. Diaz *did not* say that the illegal license plate justification was *"essentially the first words out of Officer Clark's mouth."* N.T. May 5, 2004, p. 91. Rather, he testified that it was only after the vehicle was stopped, and Officer Clark had taken his paperwork back to the police vehicle, that he was told that the illegal license plate was the reason for the traffic stop. Since the principal underpinning of the judge's finding cannot be supported by the record, I am compelled to reject this finding of fact, and conclude that the Commonwealth failed to carry its burden of proof to demonstrate

that the stop of the vehicle was founded upon reasonable suspicion.[7]

¶ 8 Moreover, the critical facts of this case are indistinguishable from the facts presented to this Court in *Commonwealth v. Casanova*, 748 A.2d 207 (Pa.Super.2000), *appeal denied*, 570 Pa. 682, 808 A.2d 569 (2002), wherein a panel of this Court held that the police were not authorized to conduct a warrantless search of a stopped vehicle.[8] Those facts were summarized by our distinguished colleague Judge Peter Paul Olszewski:

> On October 17, 1996, Philadelphia Police Officer John Maddrey set up surveillance of the 3300 block of Rand Street because the police had received several complaints of drug traffic in the area. During the surveillance, Officer Maddrey watched Reggie Meyers, one of appellant's co-defendants, engage in four separate drug transactions. In each case, the buyer would approach Meyers and give him money. Meyers would then go to a Dodge Aries automobile that was parked nearby, remove a plastic bag from beneath its bumper, remove an item from that bag, and give that item to the buyer. Officer Maddrey instructed backup officers to arrest the fourth buyer, Kathleen Kennedy, appellant's other co-defendant. The backup officers detained her out of Meyers' sight and confiscated one packet of crack cocaine.
>
> In the meantime, appellant arrived in a Mazda automobile, which he parked near Meyers. Meyers entered the Mazda and gave some money to appellant. After Meyers exited the vehicle, another man approached him and handed him money. Meyers returned to the Dodge Aries, removed the bag from underneath the bumper, removed an object from the bag, replaced the bag underneath the bumper, and gave that object to the man. As he walked away, this man took

---

7. It is interesting to note that the trial court did not simply rely on Officer Clark's testimony regarding the sequence of events, but sought corroboration of it through the testimony of Mr. Diaz before accepting it as true. We further note that excessive window tint was offered by Officer Clark as the reason for targeting appellant's car for further investigation, a rather familiar claim by members of the Bensalem Township Police Department. *See e.g.: Commonwealth v. Dales*, 820 A.2d 807 (Pa.Super.2003). *See also: Commonwealth v. Mason*, No.2066 EDA 2004, 872 A.2d 1272 (Memorandum filed January 25, 2005).

In any event, the trial judge did not specifically rule on the question of whether Officer Clark's claim of excessive window tint would have justified the traffic stop, perhaps because photographs of the vehicle presented by appellant established that the windows were not tinted. *See:* N.T. May 5, 2004, p. 64. That the testimony of Officer Clark was sworn precludes the possibility that the stop for tinted windows was contrived, but the claim of tinted windows is, nonetheless, puzzling. *See:* N.T. May 5, 2004, p. 4.

Therefore, I am unable to share the conclusion of the Majority that "the trial court credited Officer Clark's testimony in its entirety," *Commonwealth v. VanWinkle, supra*, at 1283 and am, very respectfully, obliged to dissent.

8. The trial court, in its Opinion to this Court did not acknowledge this Court's decision in *Commonwealth v. Casanova*, 748 A.2d 207 (Pa.Super.2000), *appeal denied*, 570 Pa. 682, 808 A.2d 569 (2002) but, instead relied on *Commonwealth v. Elliott*, 376 Pa.Super. 536, 546 A.2d 654 (1988), *appeal denied*, 521 Pa. 617, 557 A.2d 721 (1989) and 521 Pa. 621, 557 A.2d 724 (1989). This Court's Opinion in *Elliott*, however, which was grounded in part upon the "inherent mobility of a vehicle" for its conclusion that a warrantless search was proper, was decided prior to the Supreme Court's decision in *Commonwealth v. White*, 543 Pa. 45, 669 A.2d 896 (1995), holding that there was no "automobile exception" to the warrant requirement in Pennsylvania. *See also: Commonwealth v. Rosenfelt*, 443 Pa.Super. 616, 662 A.2d 1131, 1146 (1995), *appeal denied*, 544 Pa. 605, 674 A.2d 1070 (1996).

a substance from the bag, put it in a pipe, and began smoking it. Meyers walked back to appellant, who was now standing near the Mazda, and handed him the money from the third man. At this point, police officers arrested Meyers and appellant. The officers removed the baggie from underneath the Dodge Aries' bumper. The bag contained fifteen packets of cocaine. A bag underneath the Aries' gas tank cover contained alprazolam. Without obtaining a warrant, the police then searched the Mazda and found $290 in the glove compartment and a bag containing 124 packets of crack cocaine between the passenger seat and the center console.

*Casanova, supra,* at 209–210. Upon this record this Court concluded that the police conducted an illegal search when they proceeded to enter the Mazda vehicle without having first obtained a warrant. The Court's rationale was expressed as follows:

> [I]n Pennsylvania, automobile searches may only be conducted without a warrant "when there exists probable cause to search and exigent circumstances necessitating a search." [*Commonwealth v. Stewart,* 740 A.2d 712, 715 (Pa.Super.1999) (citations omitted)]. We turn first to whether the police had probable cause to search appellant's car.

¶ 9 It is well-settled that:

> "the level of probable cause necessary to justify a warrantless search of an automobile is the same as that required to obtain a search warrant." *Commonwealth v. Talley,* 430 Pa.Super. 351, 634 A.2d 640, 643 (1993) (citing *Commonwealth v. Pleummer,* 421 Pa.Super. 51, 617 A.2d 718 (1992)). "Probable cause exists where the facts and circumstances within the knowledge of the officer are reasonably trustworthy and sufficient to warrant a person of reasonable caution in be-

lieving that the person has committed the offense." *Commonwealth v. Zook,* 532 Pa. 79, 615 A.2d 1, 6 (1992).

*Commonwealth v. Gelineau,* 696 A.2d 188, 192 (Pa.Super.1997). Further, "we must focus on the circumstances as seen through the eyes of a trained police officer, and remember that in dealing with questions of probable cause, we are not dealing with certainties, but the practical and factual considerations of every day life on which reasonable and prudent men act." *Commonwealth v. Johnson,* 444 Pa.Super. 488, 664 A.2d 178, 179 (1995) (citing *Commonwealth v. Dennis,* 417 Pa.Super. 425, 612 A.2d 1014, 1016 (1992)). Here, police officers received complaints of drug activity in the area. During a stakeout, they observed Meyers exchange packets for money. Upon stopping one buyer, they discovered that the packets contained cocaine. They then watched Meyers give that money to appellant, even observing Meyers handing the money from a particular buyer directly to appellant. *We have no trouble determining that probable cause existed in this case.*

*The exigency requirement, however, poses more of a problem. Certainly the mere mobility of the automobile does not suffice to meet the exigency requirement. See: Commonwealth v. Rosenfelt,* 443 Pa.Super. 616, 662 A.2d 1131, 1146 (1995) (holding that "[a]bsent exigent circumstance apart from the car's inherent mobility," the officer should have obtained a search warrant); *see also Gelineau,* 696 A.2d at 192 n. 2 ("a proper warrantless search requires both probable cause and exigent circumstances other than the inherent mobility of the vehicle"). The Commonwealth, however, relies on more than the mobility of the auto; it argues that exigent circumstances existed here because the

officers were unaware prior to the stake-out that the Mazda was involved, and thus could not have obtained a search warrant. We are not convinced.

The Commonwealth points us to *Commonwealth v. Luv*, 557 Pa. 570, 735 A.2d 87 (1999), to support its position. *Luv*, however is readily distinguishable from the case before us. In *Luv*, officers obtained a search warrant for defendant's home. *See Luv*, 735 A.2d at 89. Defendant then left his home and went to his girlfriend's home, where he parked his car. *See id.* Officers suspected that there were drugs in defendant's car and attempted to get a new search warrant for defendant's car. *See id.* Before they could do so, however, defendant drove away. *See id.* Believing that defendant was on his way to sell the drugs contained in the car, the officers stopped him before they could get a new warrant. *See id.* While "unforeseen circumstances involving the search of an automobile coupled with the presence of probable cause, *may* excuse the requirement for a search warrant," *Commonwealth v. White*, 543 Pa. 45, 669 A.2d 896, 901 (1995) (emphasis added), we must consider the facts in this case. "Exigent circumstances arise where the need for prompt police action is imperative, either because evidence is likely to be destroyed, ... or because there exists a threat of physical harm to police officers or other innocent individuals." *Stewart*, 740 A.2d at 717 (quoting *Commonwealth v. Hinkson*, 315 Pa.Super. 23, 461 A.2d 616, 618 (1983)). This was certainly the case in *Luv* because defen-

dant was driving away with the evidence. The instant case, however, is very different because appellant was not driving away with the evidence, but rather was in police custody. We have previously stated that where "appellant was already in custody and there was no danger that any contraband within the car could be removed by him," the police must obtain a warrant. *Commonwealth v. Haskins*, 450 Pa.Super. 540, 677 A.2d 328, 331 (1996); *see also Rosenfelt*, 662 A.2d at 1146 (holding that where defendant was in custody and the car was under the officers' control, the officer "would have been only minimally burdened in securing a warrant"). While the officers may not have known that appellant's car was involved prior to the stakeout, this alone does not meet the exigency requirement in this case because both appellant and Meyers were under arrest before the officers searched the Mazda. There was certainly no chance for appellant to destroy contraband in the vehicle; he was being restrained nearby. Further, there is no indication that appellant's vehicle posed any threat to the officers or to the public. They could easily have guarded the vehicle while an officer obtained a search warrant. We cannot find that the exigent circumstances requirement has been met in this case.

*Casanova, supra* at 211–212 (emphasis supplied; footnote omitted).

¶ 10 In the present case, as in *Casanova*, the only question is one of exigency.[9] The trial court here did not, however, consider the exigency requirement, relying instead

---

**9.** The Commonwealth does not argue that this search could be justified by the consent of the driver, nor did the trial court rely on a "consent" rationale. *See:* N.T. May 5, 2005, p. 95. Indeed, in light of *Commonwealth v. Acosta*, 815 A.2d 1078 (Pa.Super.2003), *appeal denied*, 576 Pa. 710, 839 A.2d 350 (2003), any

"consent" of the driver (about which there was disagreement during the suppression hearing), would have been vitiated by the inherently coercive atmosphere and the failure of the police to fully advise Diaz of his right to refuse such consent. *See:* N.T. May 5, 2005, p. 66.

solely on its conclusion that probable cause existed. Nor did the Commonwealth present evidence of circumstances of exigency. Therefore, a *de novo* review of the record is required, and such a review compels the conclusion that there is nothing to distinguish this case from the facts of *Casanova,* for, as in that case, the vehicle here was stopped,[10] secured, and both occupants were in police custody.[11] Under these circumstances, the law of Pennsylvania, in my view, requires a warrant for the police to conduct a search of a vehicle. Therefore, since the police in this case conducted the search without having obtained a warrant,

the search was invalid and the evidence should have been suppressed.

¶ 11 Consequently, I would vacate the judgment of sentence, reverse the order of the trial court that denied the suppression motion, and remand this case to the trial court for dismissal of the charges.[12]

10. Contrary to the Commonwealth's assertion, there is no support in the record for its claim that the stopped vehicle constituted a traffic hazard. In fact it was stopped on the shoulder of a commercial highway, and there is no evidence that it was on a restricted highway or otherwise impeding the flow of traffic. *See:* N.T. May 5, 2004, p. 61.

11. The Commonwealth's argument on the applicability of *Commonwealth v. Casanova* is grounded upon its view that Mr. Diaz "could have very easily driven away with the vehicle or destroyed evidence." Commonwealth's Brief, p. 15. The Majority also accepts this view, opining that Mr. Diaz "could have driven the vehicle from the scene before the police obtained a search warrant." *Commonwealth v. VanWinkle, supra,* at 1284–85. It defies reason to propose the police would

have permitted Mr. Diaz to leave the scene while an application for a warrant was pending. Moreover, Officer Clark specifically testified that Mr. Diaz "was not free to leave" prior to the issuance of a citation. N.T. May 5, 2004, p. 15. Since the search occurred during this intervening time period, the Commonwealth cannot sustain its lack of exigency argument with this diaphanous argument.

12. I agree with the Majority that the remaining two questions raised by appellant do not warrant the grant of relief. *See: Maryland v. Wilson,* 519 U.S. 408, 117 S.Ct. 882, 886, 137 L.Ed.2d 41 (1997); *Commonwealth v. Sierra,* 555 Pa. 170, 723 A.2d 644 (1999). *See also: Commonwealth v. Garvin,* 448 Pa. 258, 293 A.2d 33 (1972); *Commonwealth v. Ingram,* 814 A.2d 264 (Pa.Super.2002), *appeal denied,* 573 Pa. 671, 821 A.2d 586 (2003).