J-A25024-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| RONALD INGRAM | |
| Appellant | No. 3433 EDA 2014 |

Appeal from the Judgment of Sentence October 27, 2014
In the Court of Common Pleas of Delaware County
Criminal Division at No(s): CP-23-CR-0004131-2013

BEFORE:  DONOHUE, J., MUNDY, J., and FITZGERALD, J.[*]

MEMORANDUM BY MUNDY, J.:                    **FILED DECEMBER 01, 2015**

Appellant, Ronald Ingram, appeals from the October 27, 2014 aggregate judgment of sentence of 81 to 162 months' incarceration, imposed following his conviction by a jury of possession of a controlled substance with intent to deliver (PWID) and tampering with evidence.[1]  After careful review, we affirm.

The trial court summarized the factual background of this case as follows.

> Appellant was arrested on April 30, 2013 at approximately 1:00 a.m. as a result of a vehicle stop conducted by two Pennsylvania State Police Officers in a marked patrol vehicle.  The Troopers were

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 35 P.S. § 780-113(a)(30) and 18 Pa.C.S.A. § 4910(1), respectively.

driving northbound on I-95 in the vicinity of Upper Chichester, Delaware County, Pennsylvania at mile marker two. Trooper Richardson observed a Chevrolet Cruze vehicle in the center lane with a right taillight that was cracked and the vehicle was clocked traveling approximately 65 mph in a 55 mph zone. [] Appellant, the sole occupant of the speeding vehicle, stopped his vehicle at the exit ramp for Route 452. Trooper Richardson testified that he asked [] Appellant to step out of his vehicle and [Appellant] reached for a duffel bag on the front passenger-side seat and retrieved a vial. As [] Appellant exited the vehicle, he pulled out the vial and smashed it on the ground. The two Troopers could smell [phencyclidine,] PCP. [] Appellant was arrested and placed in handcuffs.

Trial Court Opinion, 1/14/15, at 1-2.

Following his arrest, Appellant was charged with numerous offenses including those mentioned above.[2] Appellant filed an omnibus pretrial motion including a motion to suppress statements and physical evidence. A hearing on Appellant's motion was held on January 10, 2014, at which Trooper Richardson was the only witness. On January 27, 2014, the trial court issued an order, including its findings of fact and conclusions of law, which, *inter alia*, denied Appellant's motion to suppress physical evidence.

---

[2] In addition to PWID and tampering with evidence, Appellant was charged with two counts each of aggravated assault, 18 Pa.C.S.A. § 2702(a)(3); simple assault, 18 Pa.C.S.A. § 2701(a)(1); recklessly endangering another person, 18 Pa.C.S.A. § 2705; and one count each of intentional possession of a controlled substance, 35 P.S. § 780-113(a)(16); and possession of drug paraphernalia, 35 P.S. § 780-113(a)(32). Appellant was also cited with two summary traffic offenses for a defective taillight, 75 Pa.C.S.A. § 4303(b); and speeding, 75 Pa.C.S.A. § 3362(a). All these additional charges were either dismissed by the trial court or withdrawn by the Commonwealth prior to trial.

The matter proceeded to a jury trial, commencing on September 30, 2014. On October 2, 2014, the jury returned a verdict of guilty for PWID and tampering with evidence. On October 27, 2014, the trial court sentenced Appellant to a term of incarceration of six to 12 years on the PWID count and a consecutive term of incarceration of nine to 18 months on the tampering with evidence count. Appellant did not file a post-sentence motion. Appellant filed a timely notice of appeal on November 23, 2014.[3]

On appeal appellant raises a single question for our consideration.

> Whether the trial court erred in denying Appellant's pretrial motion to suppress, where an officer conducted an investigative detention, by ordering Appellant to exit his vehicle, when the officer did not have reasonable suspicion that criminal activity was afoot?

Appellant's Brief at 4.

When reviewing a challenge to a trial court's denial of a suppression motion, we observe the following principles.

> [An appellate court's] standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the

---

[3] Appellant and the trial court have complied with Pennsylvania Rule of Appellate Procedure 1925. The trial court's 1925(a) opinion incorporates by reference its January 27, 2014 order, findings and conclusions. Trial Court Opinion, 1/14/15, at 3.

Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, [the appellate court is] bound by [those] findings and may reverse only if the court's legal conclusions are erroneous. Where … the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to [] plenary review.

*Commonwealth v. Garibay*, 106 A.3d 136, 138-139 (Pa. Super. 2014) (*en banc*), *appeal denied*, --- A.3d ---, 2015 WL 5972499 (Pa. 2015). Our scope of review is limited to the suppression hearing record. *In re L.J.*, 79 A.3d 1073, 1080 (Pa. 2013).

In evaluating the level of interaction [between a police officer and a defendant], courts conduct an objective examination of the totality of the surrounding circumstances. We are bound by the suppression court's factual findings, if supported by the record; however, the question presented— whether a seizure occurred—is a pure question of law subject to plenary review.

*Commonwealth v. Lyles*, 97 A.3d 298, 302 (Pa. 2014) (citations omitted).

Based on the testimony received during the suppression motion hearing, the trial court summarized its findings of fact concerning the circumstances as they developed during the subject traffic stop. After Appellant pulled over, as recited above, the following occurred.

[Trooper Richardson] approached [Appellant's] vehicle from the passenger side, as was his general

- 4 -

practice. He asked [Appellant], who was the sole occupant of the vehicle, for his driver's license, registration and insurance information. [Appellant] produced a New York driver's license, and a rental agreement for the vehicle. … The Trooper then explained to [Appellant] why he stopped him and told him he was going to give him a warning.

As the Trooper approached the car he realized that the rear light was stuck in the "on" position and was not cracked as he had originally thought. Trooper Wiley was also outside the police vehicle. When Trooper Richardson initially approached the vehicle, he testified that he smelled some type of chemical odor but he was not sure what it was.

Once Trooper Richardson received [Appellant's] license, he used his patrol vehicle's computer and ran a check of [Appellant] through NCIC. The Trooper learned that [Appellant's] name was on the rental car agreement. The NCIC check also produced an extensive rap sheet for [Appellant]. [Appellant] had been convicted of possession of a firearm and robbery and other crimes from New Jersey, Delaware, Texas and Maryland.

Trooper Richardson determined that [Appellant's] vehicle was rented in Philadelphia, however [Appellant] told the Officer that he had rented the vehicle in New Jersey and was headed to New Jersey to return the vehicle.

Trooper Richardson had decided to give [Appellant] a warning for the two traffic violations but was unable to print the warning because the printer in his vehicle was not working. The Trooper exited the patrol vehicle and approached the passenger-side of [Appellant's] vehicle and asked him to step out of the car. Trooper Richardson wanted to show [Appellant] the broken tail light. When the Officer asked [Appellant] to step out, [Appellant] grabbed the gear shift knob and the ignition keys, then reached for a duffle bag on the front passenger-side seat and retrieved a vial. Trooper Richardson

backed up to the rear of the vehicle and drew his firearm. [Appellant] put both of his hands in his pockets. As [Appellant] reached into the duffel bag, the Trooper was concerned that he had a weapon. As [Appellant] exited the vehicle, he pulled out the vial and smashed it on the ground. Trooper Richardson could smell PCP.

Trial Court Order and Findings, 1/27/14, at 2-3.

From these findings, the trial court determined that the traffic stop was not completed at the time Trooper Richardson asked Appellant to step out of the vehicle. Trial Court Order and Findings, 1/27/14, at 6. The trial court found that Trooper Richardson merely asked Appellant to exit the vehicle in order to show him the defective taillight before issuing the warning and terminating the stop.[4] *Id.* The trial court determined that the police officers did not need reasonable suspicion of criminal activity to request an occupant to exit a vehicle during a lawful traffic stop. *Id.* at 5.

"As a matter of precaution, a police officer is entitled to ask occupants of a vehicle to step from the vehicle during a traffic stop." ***Commonwealth v. Van Winkle***, 880 A.2d 1280, 1285 (Pa. Super. 2005) (citations omitted), *appeal denied*, 898 A.2d 1071 (Pa. 2006). "[F]ollowing a lawful traffic stop, an officer may order both the driver and passengers of a vehicle to exit the vehicle until the traffic stop is completed, even absent a reasonable

_____

[4] The trial court also concluded that the police officers would have had reasonable belief that Appellant might be armed, but that the officer's request was not specifically for safety reasons. Trial Court Order and Findings, 1/27/14, at 7.

- 6 -

suspicion that criminal activity is afoot." ***Commonwealth v. Pratt***, 930 A.2d 561, 564, (Pa. Super. 2007) (citations omitted), *appeal denied*, 946 A.2d 686 (Pa. 2008).

> Once the primary traffic stop has concluded, however, the officer's authority to order either driver or occupant from the car is extinguished. Thus, if subsequently the officer directs or requests the occupants to exit the vehicle, his show of authority may constitute an investigatory detention subject to a renewed showing of reasonable suspicion.

***Commonwealth v. Reppert***, 814 A.2d 1196, 1202, (Pa. Super. 2002) (citations omitted).

Appellant concedes the validity of the initial traffic stop for speeding and taillight infractions. Appellant's Brief at 11. Appellant attempts to distinguish this precedent, noting, "Appellant was left in the vehicle for the entire investigation. Officer safety cannot be used to justify the decision to ask Appellant out of the vehicle in the present case." ***Id.*** at 13. Additionally Appellant asserts "[t]he stated reason for asking Appellant to exit the vehicle, to show him the malfunctioning taillight is illogical given the fact that the vehicle was a rental car." ***Id.*** at 13. Finally, Appellant argues that the purpose of the traffic stop was essentially complete at the time the police officer directed him to exit the vehicle, and that the police officers had excessively prolonged the traffic stop with the subjective intent to further investigate Appellant without any reasonable suspicion to do so. ***Id.*** at 13-14, *citing* ***Rodriguez v. United States***, 135 S. Ct 1609, 1612 (2015)

(holding, "a police stop exceeding the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures"). We disagree with Appellant's arguments.

The fact that Appellant had not been asked to exit the vehicle earlier, does not negate any safety concern the officers acquired during the stop upon learning of Appellant's extensive criminal record. As the cases make clear, no additional reasonable suspicion is required to justify a police officer's request for an occupant to exit a vehicle during a valid traffic stop. **See Van Winkle**, **supra**. The timing of that request is irrelevant.

In any event, the trial court found that the purpose of Officer Richardson's request was to show him the defective taillight. Trial Court Order and Findings, 1/27/14, at 6. Contrary to Appellant's assertion, we conclude this stated purpose is not "illogical" because the car was a rental. It is prudent for any driver to be aware of defects with the vehicle he or she is driving so they can operate it more safely. Knowledge of a malfunctioning light will allow a driver to be aware of what surrounding traffic perceives that may affect how they react to his driving. That the car is a rental is inapposite to these legitimate concerns.

We further conclude that Appellant's reliance on **Rodriguez** is misplaced. In **Rodriguez**, the police had stopped the defendant for a traffic violation, completed the attendant document and record checks, and issued a written warning. **Rodriguez**, **supra** at 1613. Thereafter, police continued

to detain Appellant while they walked a drug-sniffing dog around the vehicle. *Id.* The United States Supreme Court held the prolongation of the traffic stop without reasonable suspicion beyond that required to effect the purpose of the stop was constitutionally infirm. *Id.* at 1616. Instantly, the traffic stop had not been completed and the request to exit the vehicle was not an unrelated action that "prolonged" the purpose of the stop. Rather it was integral to the purpose of the stop to show Appellant the defective light. Because this is not a case of improperly extending a traffic stop, *Rodriguez* does not apply.

Appellant characterizes the police officers' request as a supposed "pretext for an ulterior motive" to investigate for drugs and weapons. Appellant's Brief at 12. That the police officers had multiple concerns, does not negate the legitimacy of their request as found by the trial court. We have noted that where a legitimate objective basis for police action exists, "an officer's uncommunicated subjective intent to act illegally is irrelevant." *Commonwealth v. Bennett*, 827 A.2d 469, 480 (Pa. Super. 2003) (citations omitted).

Based on our review of the record, we conclude the trial court's findings are supported by the testimony of Officer Richardson. *See Garibay*, *supra*. We further conclude that the trial court's legal conclusions that Officer Richardson acted within the purpose of the traffic stop when requesting Appellant to alight the vehicle and that additional reasonable

suspicion need not be shown to justify the request are correct.[5]  Therefore, the trial court correctly denied Appellant's motion to suppress physical evidence in this case.  Accordingly, we affirm the October 27, 2014 judgment of sentence.

Judgment of sentence affirmed.

Judge Donohue joins the memorandum.

Justice Fitzgerald concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/1/2015

---

[5] Given the legitimacy of the request to exit the vehicle, Appellant does not dispute that his subsequent actions in reaching for the duffle bag, retrieving a vial, and smashing the vial on the pavement provided probable cause to arrest.