**COMMONWEALTH of Pennsylvania,**
**Appellee,**

v.

**Eric Dion BELL, Appellant.**

Superior Court of Pennsylvania.

Argued Nov. 9, 2004.
Filed March 18, 2005.

Mark S. Keenheel, Philadelphia, for appellant.

Vram Nedurian, Asst. Dist. Atty., Media, for Com., appellee.

BEFORE: DEL SOLE, P.J., HUDOCK, FORD ELLIOTT, JOYCE, STEVENS, LALLY–GREEN, TODD, KLEIN and BOWES, JJ.

OPINION BY HUDOCK, J.:

¶ 1 Eric Dion Bell (Appellant) appeals from the judgment of sentence entered following a stipulated, non-jury trial in which the trial court found him guilty of possession of a controlled substance, possession of a controlled substance with intent to deliver, and possession of drug paraphernalia.[1] The trial court imposed an aggregate term of confinement of not less than thirty-six months or more than seventy-two months, followed by a term of twelve months' probation. Both Appellant and the trial court have complied with the requirements of Pa.R.A.P. 1925. We affirm.

¶ 2 We glean the relevant facts of this case from the post-suppression hearing findings of fact and the Rule 1925(a) opinion, both penned by the Honorable Joseph

1. 35 Pa.C.S.A. §§ 780–113(a)(16), 780– 113(a)(30) and 780–113(a)(32).

P. Cronin. Detective James Frey is employed as a detective by the Criminal Investigative Unit of the Delaware County District Attorney's Office and was assigned to the narcotics unit on June 11, 2002. Detective Frey has been a detective for sixteen years and is a qualified expert in the field of illegal narcotics identification and illegal narcotics sales.

¶ 3 For two years before June 11, 2002, Detective Frey knew from a reliable confidential informant that Appellant went by the name Angelo DeMarco, sold cocaine in Delaware County, and had been arrested on a gun charge. At approximately 7:45 p.m. on June 11, 2002, a second reliable confidential informant told Detective Frey that Appellant went by the name DeMarco, that he had three children, lived in New Jersey and worked as a dog breeder. This informant provided Detective Frey with a description of Appellant and his wife and advised him that the duo was en route to 99 South Lansdowne Avenue, Lansdowne, Pennsylvania, in a gray Toyota to deliver a quantity of cocaine to a white female who lives on the second floor of that address. As a result of this information, Detective Frey set up surveillance in and around the parking lot of 99 South Lansdowne Avenue.

¶ 4 As the informant predicted, at approximately 8:45 p.m. on June 11, 2002, a gray Toyota pulled into the parking area of 99 South Lansdowne Avenue. Detective Frey observed a female driving the gray Toyota and a male passenger; both fit the descriptions provided by the informant of Appellant and his wife. Detective Frey approached the Toyota and yelled to the occupants to show their hands. Three unmarked police vehicles boxed the Toyota in the parking area. Appellant and his wife were removed from the Toyota and handcuffed for the safety of the officers.

¶ 5 As the police were removing Appellant from the Toyota, one officer advised Detective Frey that he observed an "action"—Appellant putting a package on the floor of the vehicle. Detective Frey advised Appellant that he was not under arrest and then read Appellant the Miranda warnings. Appellant told Detective Frey that he understood his Miranda warnings and that he waived his rights to remain silent and to the assistance of any attorney. Appellant informed Detective Frey that he was delivering approximately an ounce of cocaine to a white female. Detective Frey asked Appellant if he wanted to cooperate because Detective Frey knew there were drugs in the vehicle and that Appellant might want to help himself down the road. Appellant signed a consent form at 8:48 P.M. on June 11, 2002, voluntarily permitting the search of his vehicle. The search uncovered, from between the passenger door and passenger seat, a package containing one bag of a granular white substance and one bag of a chunky white substance (both confirmed to be cocaine), along with a cell phone, a pager, mail addressed to Appellant, an insurance card issued to Appellant, an owner's card for the vehicle, a dog training manual, and $2,600.00 in cash. Detective Frey did not apply for a search warrant prior to the seizure of the suspected cocaine from the vehicle.

¶ 6 Appellant testified that when he and his wife pulled into the parking lot of 99 South Lansdowne Avenue, three or four vehicles pulled up to his car and approximately seven or eight officers approached the vehicle with their guns pointed at him. Appellant further testified that Detective Frey told him that the police had been waiting all day for him and that if Appellant did not tell Detective Frey where the drugs were that his wife would be locked up; however, if Appellant did tell him where the drugs were, things would go

easy for him. Appellant testified that he consented to the search because he did not want his wife to be locked up and because he was scared.

¶ 7 Appellant sought suppression of the evidence seized from his car on the basis that the search of his car violated his constitutional rights because his consent was not voluntary. Following a hearing, Judge Cronin denied the motion to suppress, finding that the police had probable cause and an exigent circumstance which vitiated the need for a search warrant. Conclusion of Law No. 11, 12/6/02. Appellant proceeded to a bench trial before Judge Cronin, who convicted him of the above offenses. On appeal, a divided panel of this Court reversed Appellant's conviction, finding that his consent to search the vehicle was not voluntary. This Court granted the Commonwealth's request for *en banc* review of the panel decision, and both parties filed substitute briefs.

¶ 8 In his substitute brief, Appellant sets forth the following questions for consideration:

I. Whether consent to search was voluntary[?]

II. Whether Appellant's alleged admission implied that Appellant's consent was voluntary?

III. Whether record supports finding that drugs were in plain view[?]

IV. Whether there was a potential for loss of contraband[?]

Appellant's Substituted Brief at 1.

¶ 9 Initially, we note that Appellant raised only two issues of those four in his Rule 1925(b) statement: whether his consent to search was voluntary and whether there was a potential for loss of contraband. Normally, this would preclude our review of the other two issues under the waiver rule, announced in *Commonwealth v. Lord*, 553 Pa. 415, 420, 719 A.2d 306, 309 (1998). However, having reviewed the record and briefs, we consider Appellant's second issue to be argument related to the consent question, and his third issue to be argument in response to statements contained in the trial court's Rule 1925(a) opinion. Therefore, we will address the issues accordingly.

¶ 10 Our standard of review in addressing a challenge to a trial court's denial of a motion to suppress is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. *Commonwealth v. LaMonte*, 859 A.2d 495, 499 (Pa.Super.2004). Because the prosecution prevailed in the suppression court, we may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. *LaMonte*, 859 A.2d at 499. Where the record supports the factual findings of the suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn from them are in error. *Id.*

¶ 11 Based on our review of the record, we find support for the trial court's findings of fact with one caveat. The record does not support Judge Cronin's statement that an officer saw Appellant place the "cocaine" on the floor of the vehicle and that the "cocaine" was in plain view. We conclude that Judge Cronin's references to "cocaine" were the product of hindsight. The record indicates that the officer saw Appellant put a package or bag on the floor, not cocaine. There was no evidence describing the package or its contents at the time the officer saw it in Appellant's possession.

¶ 12 Our focus now shifts to the propriety of the trial court's legal conclusions.

After the suppression hearing, Judge Cronin made the following conclusions of law.

1. The testimony of Detective Frey was credible and unrebutted.

2. The seizure of the suspected contraband and other evidence from the gray Toyota was the result of a warrantless search.

3. A warrantless search of a motor vehicle under Article 1, Section 8 of the Pennsylvania Constitution is valid where there exists both probable cause and exigent circumstances. *Com. v. White*, 543 Pa. 45, 669 A.2d 896 (1995).

4. The Commonwealth had probable cause to search the gray Toyota for evidence of criminal activity.

5. The exigent circumstances that would excuse a warrantless search of the gray Toyota include potential loss of contraband and the inability of the police to obtain a warrant in advance of the search. *Com. v. White*, supra.

6. A second type of exception dealing with an exigency that would excuse a warrantless search is a search incident to arrest. *Com. v. White*, supra.

7. A third type of exception dealing with an exigency that would excuse a warrantless search would be potential danger to police or others. *Com. v. Perry*, 568 Pa. 499, 798 A.2d 697, 2002 Pa. LEXIS 1146 (2002)[.]

8. A fourth exception to the warrant requirement that would excuse a warrantless search is a search conducted for inventory purposes *Com. v. White*, supra, *Com. v. Perry*, supra.

9. As indicated in Finding of Fact # 8, Confidential Informant # 1 told Detective Frey that [Appellant] and his wife were coming to Lansdowne "... within the hour ..." to sell a quantity of narcotics.

10. The record supports the existence of one of the aforementioned exigencies or exceptions, that being the inability of the police to obtain a search warrant thereby enhancing the potential for the loss of the contraband.

11. The warrantless search of [Appellant's] motor vehicle was valid because of the existence of probable cause to search and exigent circumstances.

Conclusions of Law, 12/6/02. In his Rule 1925(a) opinion, Judge Cronin abandoned the exigent circumstance basis for his suppression decision. He concluded, alternatively, that "the suspected cocaine was in plain view and [Appellant's] consent to search was not required.... Assuming *arguendo* that the contraband was not in plain view, the consent to search given by [Appellant] was voluntary and, therefore, a search warrant was not required ... [B]ecause [Appellant] cooperated with Detective Frey by waiving his right to remain silent and by admitting to criminal conduct [before consent to search was requested], [Appellant's] suggestion that he was coerced into signing the consent form ... [is] incongruous and disingenuous." Trial Court Opinion, 6/26/03, at 6–7.

¶ 13 We find support in the record for Judge Cronin's conclusions that the police had probable cause to search the vehicle and that Appellant's consent to search the vehicle was voluntary. We affirm on those grounds.

¶ 14 The Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution protects individuals from unreasonable searches and seizures, thereby ensuring the "right of each individual to be let alone." *Commonwealth v. Campbell*, 862 A.2d 659, 663 (Pa.Super.2004) (citations omitted). Searches by the state shall be permitted only upon obtaining a warrant issued by a neutral and detached magis-

trate. *Commonwealth v. Perry,* 568 Pa. 499, 504, 798 A.2d 697, 699 (2002). Thus, as a general proposition, warrantless searches are unreasonable for constitutional purposes. *Perry,* 798 A.2d at 699–700. Evidence obtained from an unreasonable search or seizure is inadmissible at trial. *Campbell,* 862 A.2d at 663 (citation omitted).

¶ 15 Police officers may not conduct a warrantless search or seizure unless one of several recognized exceptions applies. One such exception is consent, voluntarily given. *Commonwealth v. Strickler,* 563 Pa. at 57, 757 A.2d 884, 888 (2000). To establish a valid consensual search, the Commonwealth must first prove that the consent was given during a legal police interaction. Where the underlying encounter is found to be lawful, voluntariness becomes the exclusive focus. *Strickler,* at 57, 757 A.2d at 888–89. In this case, Appellant does not dispute that the initial stop was a valid investigative detention. The information supplied by the confidential informant and Appellant's appearance in the gray Toyota as predicted provided Detective Frey with a reasonable, articulable suspicion that Appellant was engaged in illegal narcotics activity. *See LaMonte,* 859 A.2d at 500 (stating reasonable and articulable suspicion standard for investigative detention).

¶ 16 The totality of the circumstances surrounding the investigative detention supports Judge Cronin's conclusion that probable cause existed to search Appellant's vehicle. Probable cause exists if the facts and circumstances within the officer's knowledge are sufficient to warrant a man of reasonable caution to believe that the suspect has committed or is committing a crime. *Commonwealth v. Rogers,* 578 Pa. 127, 138, 849 A.2d 1185, 1192 (2004). Detective Frey was a veteran narcotics officer, an expert in the field of illegal drug identification and sales. Detective Frey had information from a reasonably trustworthy source that Appellant was engaged in illegal narcotics activity: delivering cocaine. While removing Appellant from the vehicle, an officer informed Detective Frey that the officer "saw an action," *i.e.,* Appellant putting a package on the floor of the vehicle. Upon hearing the *Miranda* warnings, Appellant acted as though "he knew he was caught." N.T., 11/19/02, at 20. After waiving his constitutional rights, Appellant admitted he had an ounce of cocaine for a female resident of 99 South Lansdowne Avenue.

¶ 17 Appellant's reputation, when added to Detective Frey's experience, the reliable information, the package, and Appellant's post-*Miranda* admission were sufficient to warrant Detective Frey's belief that Appellant was committing a crime: he possessed an ounce of cocaine for delivery. Reasonable suspicion had ripened into probable cause to search the car, and would have provided more than enough to justify the issuance of a search warrant.

¶ 18 Given the validity of the underlying encounter, our focus shifts to whether Appellant's consent negated the need for a search warrant. The Commonwealth has the burden to prove that a defendant consented to a warrantless search. *Strickler,* 563 Pa. at 79, 757 A.2d at 901. "To establish a voluntary consensual search, the Commonwealth must prove that a consent is the product of an essentially free and unconstrained choice— not the result of duress or coercion, express or implied, or a will overborne— under the totality of the circumstances." *Id.* The following is a non-exclusive list of factors which may be considered in assessing the legality of a consensual search:

1. the presence or absence of police excesses;

2. physical contact or police direction of the subject's movements;

3. the demeanor of the police officer;

4. the location of the encounter;

5. the manner of expression used by the officer in addressing the subject;

6. the content of the interrogatories or statements;

7. whether the subject was told that he or she was free to leave; and

8. the maturity, sophistication and mental or emotional state of the defendant (including age, intelligence and capacity to exercise free will).

*Strickler*, 563 Pa. at 72–73, 79, 757 A.2d at 897–898, 901.

¶ 19 On June 11, 2002, Appellant was thirty years old, a husband and father, a high school graduate with some college experience, and a former Marine. While Appellant's testimony paints an image of drawn guns, raised voices, cuss words, and police manhandling, Judge Cronin did not include any elements of Appellant's testimony in his findings of fact. To the contrary, Judge Cronin specifically found Detective Frey's version credible and unrebutted. Trial Court Opinion, 6/26/03, at 7. We conclude, therefore, that Judge Cronin determined Appellant's version of events to be incredible. Because all credibility determinations are made by the finder of fact, we will not substitute our judgment for that of Judge Cronin where, as in this case, there is sufficient evidence for the ruling. *Commonwealth v. Johonoson*, 844 A.2d 556, 560 (Pa.Super.2004).

¶ 20 According to the Commonwealth's unrebutted evidence, Detective Frey set up surveillance with ten plainclothes police officers in and around the parking lot of 99 South Lansdowne Avenue. Detective Frey wore a vest and badge, and his gun was holstered. The other police officers were in plain clothes. Three unmarked police cars boxed in Appellant's vehicle. Appellant was removed from the car and handcuffed for police safety. Detective Frey described his demeanor as calm, professional, and under control as he read Appellant the *Miranda* warnings from a card kept in the detective's wallet. "When advice concerning constitutional rights is furnished the consenting party, it is very persuasive evidence of voluntariness and may be determinative even though the consent was given after a display of weapons and while the consenter was in custody." *Commonwealth v. Pytak*, 278 Pa.Super. 476, 420 A.2d 640, 646 (1980) (citation omitted).

¶ 21 Appellant indicated that he understood all of his rights, acting as though "he knew he was caught." N.T., 11/19/02, at 20. Detective Frey informed Appellant that the police knew he was there to deliver drugs and that an officer observed Appellant put a package on the floor of the car. Detective Frey invited Appellant to cooperate; he did not coerce Appellant into making a statement with threats or actions. Having waived his right to remain silent and to an attorney, Appellant admitted to having an ounce of cocaine for delivery to a female resident of 99 South Lansdowne Avenue. In response to Detective Frey's request, Appellant signed a consent form that Detective Frey read to him. As Detective Frey read the consent form, Appellant appeared to read along. *Id.* at 23. Before signing the consent form, Appellant confirmed that he spoke English and was not under the influence of drugs or alcohol. Appellant identified his signature on the form.

¶ 22 Appellant argues that, in light of all the circumstances, his alleged admission that he had an ounce of cocaine for a woman on the second floor should be given little weight and, as such, would not sup-

port a finding that his consent was voluntary. Appellant's Brief at 13–19. In support of this argument, Appellant relies on three circumstances. First, his alleged admission did not concern the location of the drugs. We disagree. Appellant's admission concerns the location of the drugs when coupled with (1) Detective Frey's knowledge that Appellant had come to deliver cocaine and (2) the package an officer saw Appellant place on the floor of the car.

¶ 23 Second, Appellant contends his alleged admission and voluntary consent were obtained in less than three minutes from his removal of Appellant from the vehicle, which suggests that the search occurred before consent was requested and received. We disagree. Judge Cronin was free to believe—and chose to believe—that Detective Frey could read Appellant the *Miranda* warnings, explain the situation, read the consent form to Appellant as Appellant read along, and obtain Appellant's consent within three minutes. Moreover, the record indicates that Appellant arrived at *approximately* 8:45 p.m. Appellant himself testified to arriving somewhere between 8:30 and 8:45 p.m. Detective Frey indicated that the initial stop occurred within five minutes of Appellant signing the consent form at 8:48 p.m. These temporal discrepancies could lead Judge Cronin to accept that Appellant had enough time to consent to the search.

¶ 24 The third circumstance Appellant relies on is that Detective Frey made a specific choice not to obtain a search warrant in order to avoid paperwork. Be that as it may, the trial court found that Appellant was read the *Miranda* warnings and then voluntarily consented to the search. Appellant's choice to cooperate facilitated Detective Frey's desire to avoid paperwork.

¶ 25 Based upon the totality of the circumstances, the trial court correctly held that Appellant voluntarily consented to the search of his vehicle. Therefore, the suppression court properly ruled that the evidence seized from the vehicle was admissible at trial. Given our determination that this warrantless search was justified by Appellant's voluntary consent, we need not address the potential for loss of contraband exception to warrantless searches.

¶ 26 Judgment of sentence affirmed.

¶ 27 TODD, J. files a Dissenting Opinion, joined by DEL SOLE, P.J.

DISSENTING OPINION BY TODD, J.:

¶ 1 Because I conclude that Appellant's consent to search his vehicle was neither voluntary, nor the product of his free choice, I respectfully dissent.

¶ 2 This Court has recognized that in order "[t]o establish a voluntary consensual search, the Commonwealth must prove 'that a consent is the product of an essentially free and unconstrained choice—not the result of duress or coercion, express or implied, or a will overborne—under the totality of the circumstances.'" *Commonwealth v. Acosta*, 815 A.2d 1078, 1083 (Pa.Super.2003) (citations omitted).

¶ 3 As noted by the Majority, our Supreme Court in *Commonwealth v. Strickler* set forth a number of factors to be considered when determining the legality of a consensual search, including:

1. the existence of a prior, lawful detention;

2. the presence or absence of police excesses, i.e., use of sirens and flashers, commands to halt, the display of weapons, and the operation of the police car in an aggressive manner;

3. any physical contact or police direction of the subject's movements;

4. the demeanor of the police officer;

5. the location of the confrontation;
6. the manner of expression used by the officer in addressing the citizen;
7. the content of the interrogatories or statements;
8. the existence and character of the initial investigative detention;
9. the seamlessness of the transition between the traffic stop and the subsequent encounter.

*Commonwealth v. Strickler*, 563 Pa. 47, 72–74, 757 A.2d 884, 897–99 (2000).

¶ 4 The Majority, in deferring to the credibility determinations of Judge Cronin and in finding that there was sufficient evidence for his ruling, states:

> While Appellant's unrebutted testimony paints an image of drawn guns, raised voices, cuss words, and police manhandling, Judge Cronin did not include any elements of Appellant's testimony in his findings of fact. To the contrary, Judge Cronin specifically found Detective Frey's version credible and unrebutted. Trial Court Opinion, 6/26/03, at 7. We conclude, therefore, that Judge Cronin determined Appellant's unrebutted version of events to be incredible.

(Majority Opinion, at 274.)

¶ 5 However, I conclude that Detective Frey's testimony supports Appellant's argument that his consent was coerced. It is undisputed by either party that the initial stop was a valid investigative detention. With regard to the absence or presence of police excesses, Detective Frey testified that, in addition to himself, there were ten additional plainclothes officers present when Appellant's vehicle was stopped. (N.T. Hearing, 11/19/02, at 13.) Appellant's vehicle then was boxed in by three unmarked police cars. (*Id.* at 15.) As Detective Frey approached Appellant's car with other officers, he yelled "let's see your hands," (*id.* at 14), and although De-

tective Frey testified that he did not believe he had removed his gun from his holster at this time, he did have his hand on his weapon. (*Id.* at 15.) The officers then removed Appellant and his wife from their vehicle, instructed them to put their hands behind their backs, and handcuffed them. (*Id.* at 15–16.) All of these factors, testified to by Detective Frey, clearly evidence not only the existence of police excesses, but police direction of Appellant's movements, and an initial hostile demeanor and manner of expression by Detective Frey, all of which may be considered aspects of coercion as set forth in *Strickler*, *supra*.

¶ 6 In addition, once Appellant and his wife were handcuffed, Detective Frey advised them that they were not under arrest, but proceeded to read them their *Miranda* rights. Detective Frey also testified that he advised Appellant that he knew he was delivering cocaine, and asked him who it was for and how much was being delivered. The content of the interrogatories or statements by an officer may also contribute to a coercive atmosphere, *see Strickler*, 563 Pa. at 73, 757 A.2d at 898, and, in my view, did so in the instant case. I believe there is further support for such a conclusion based on the fact that Detective Frey testified that after Appellant answered Detective Frey's questions, the officer requested and received Appellant's consent to search the vehicle, because "[Appellant] knew he was caught, I guess you could say." (N.T. Hearing, 11/19/02, at 20.)

¶ 7 Finally, according to the record, the elapsed time between the stop of Appellant's vehicle and Appellant's signing of the consent form to search his vehicle was approximately three to five minutes. There is no evidence, however, to suggest that there was ever an endpoint to Appellant's initial detention, or that Appellant

was advised at any time that he had a right to withhold his consent to a search of his vehicle. As the Court in *Strickler* noted, "while ... the admonition to a motorist that he is free to leave is not a constitutional imperative, the presence or absence of such a clear, identified endpoint to the lawful seizure remains a significant, salient factor in the totality assessment." 563 Pa. at 74, 757 A.2d at 899. The Court reiterated that "in evaluating a consensual encounter that follows a traffic or similar stop, a central consideration will be whether the objective circumstances would demonstrate to a reasonable citizen that he is no longer subject to domination by police." *Id.* at 75, 757 A.2d at 899. Due to the fact that the entire interaction, from the officers' approach of Appellant's vehicle to the time Detective Frey obtained Appellant's consent for the search, occurred within three to five minutes, as well as the fact that Appellant had already been placed in handcuffs when he signed the consent form for the search of his vehicle,[2] I do not believe the objective circumstances would have suggested to Appellant that he was no longer subject to domination by the police at the time he signed the consent form.

¶ 8 Thus, while recognizing that this Court may not disturb the credibility determinations made by the trial court which are supported by the record, I believe the record itself, including the testimony of Detective Frey, demonstrates that Appellant's consent was neither voluntary nor the product of free choice. Accordingly, I would vacate Appellant's judgment of sentence on the basis that the trial court erred in refusing to suppress the evidence seized as a result of the officer's search of Appellant's vehicle, and remand for a new trial.[3] For these reasons, I am compelled to dissent.

¶ 9 DEL SOLE, P.J., joins in this Dissenting Opinion by TODD, J.

2. It is unclear from the record whether Appellant's handcuffs were removed prior to his signing the consent form.

3. The Majority notes that, in light of its conclusion that Appellant voluntarily gave consent to search his vehicle, it is unnecessary to address the issue of whether the warrantless search of Appellant's vehicle was justified under the potential for loss of contraband exception. As I do not believe Appellant's consent was voluntary, however, I further note that I conclude that there were no such exigent circumstances to justify a warrantless search of the vehicle, since Appellant and his wife were handcuffed and outside of the vehicle, and the vehicle was boxed in by three police cars.