J-S22042-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :    IN THE SUPERIOR COURT OF
:           PENNSYLVANIA
:
v.                 :
:
:
LANNY LEE RAMEY JR.         :
:
Appellant         :    No. 186 MDA 2021

Appeal from the Judgment of Sentence Entered February 4, 2021
In the Court of Common Pleas of Snyder County Criminal Division at
No(s): CP-55-CR-0000108-2020

BEFORE: PANELLA, P.J., McCAFFERY, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:       **FILED: AUGUST 9, 2021**

Lanny Lee Ramey Jr. (Ramey) appeals from the judgment of sentence imposed in the Court of Common Pleas of Snyder County (trial court) after his bench conviction for driving under the influence (DUI)-general impairment, second offense, and DUI-highest rate-second offense.[1] He challenges the denial of his motion to suppress. We affirm.

We take the following factual background and procedural history from the trial court's March 29, 2021 opinion and our independent review of the record.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 75 Pa.C.S. §§ 3802(a)(1) and 3802(c). The Commonwealth withdrew the charges of careless driving, 75 Pa.C.S. § 3714(a), and reckless driving, 75 Pa.C.S. § 3736(a).

**I.**

On December 31, 2019, Trooper Rodney Shoeman (Trooper Shoeman) of the Pennsylvania State Police (PSP) filed a criminal complaint against Ramey for the above charges related to an incident that occurred at approximately 3:00 A.M. on November 9, 2019, in Monroe Township, Snyder County. After a preliminary hearing bound over all counts for trial, Ramey filed an omnibus pre-trial motion in which he sought to suppress the evidence based on his allegedly unconstitutional stop and seizure.

**A.**

At the suppression hearing, Trooper Shoeman was the only witness. He testified that on the night in question, he and his partner[2] were dispatched to the Monroe Township Sheetz Gas Station and Convenience Store based on the report of a male passed out in the driver's seat of his vehicle, partially outside of the open driver's side door of his vehicle. Dispatch provided the trooper with the make, model, color and license plate number of the subject vehicle as had been reported but did not inform the trooper who called in the tip. When he approached the Sheetz, Trooper Shoeman saw a vehicle matching the description provided by Dispatch pulling south onto Routes 11 and 15. The operator of the vehicle did not commit any traffic violations. As the

---

[2] Trooper Trey Geyer. (**See** Affidavit of Probable Cause, 12/31/19).

trooper turned around in the parking lot, several people began pointing him toward the subject vehicle.

Trooper Shoeman immediately left the lot and travelled in the direction he had seen the vehicle headed. Approximately ten minutes later, he identified the vehicle pulled off the road and parked in a closed Weis Markets lot about one-and-a-half miles away. The car was running with its headlights illuminated. He pulled behind the car to confirm it was consistent with the information provided by Dispatch. Although the license plate number provided by Dispatch was ZFK-1784 and the plate number on the vehicle had the numbers in a slightly different order, ZFK-7814, the information matched. As the car moved out of the parking space, Trooper Shoeman activated his emergency lights and gave verbal commands from his cruiser to the driver of the vehicle to stop and turn off his engine.

The two troopers approached the vehicle on foot. Ramey was the only occupant of the vehicle. Trooper Shoeman immediately smelled the strong odor of alcohol and saw a case of Michelob Ultra in the passenger seat. Ramey volunteered that he had been drinking and wanted the troopers to take him to the hospital because he knew how the system worked. The troopers observed that Ramey's speech was slow and sluggish. Ramey refused to submit to a preliminary breath test (PBT) or to attempt field sobriety tests. Trooper Shoeman placed him under arrest for DUI. (**See** N.T. Suppression Hearing, 6/09/20, at 5-16).

- 3 -

Ramey obtained a copy of the video recording from the troopers' vehicle (MVR) and admitted it into evidence at the suppression hearing. The court watched the video in chambers. Ramey did not testify on his own behalf.

The Court denied Ramey's motion to suppress, explaining:

> The Court finds the troopers received information that an individual was passed out in a vehicle at the Sheetz department store, received information that a door was open and an individual was passed out. Law enforcement officers have a duty and an obligation to investigate situations where it is possible that someone is ill or not feeling well, as well as possible violations of the law, in this case, driving under the influence. He received information regarding the vehicle. They observed the vehicle in an establishment of a closed business at three o'clock in the morning. They stopped the vehicle, whether they suspected Driving Under the Influence or whether the [driver] was ill or having health problems. If an individual was having health problems where it would cause them to pass out and were attempting to get home, I would expect troopers to investigate. In this case, the Court finds the troopers had reasonable suspicion to stop the vehicle. It was obvious from the MVR that—and [Ramey]'s own unsolicited statements that he was under the influence of alcohol—the Court finds the stop was reasonable, that there was reasonable suspicion. The troopers then had probable cause to arrest, [Ramey] was transported, and therefore the resulting evidence and information gathered by the troopers is admissible.

(*See id.* at 18-19).

### B.

On November 6, 2020, after a stipulated bench trial, the trial court found Ramey guilty of the two DUI counts. On February 4, 2021, the court sentenced him to five years of restrictive probation, with the first year to be served in the Snyder County Prison. Ramey timely appealed on February 8, 2021, and the trial court ordered him to a file a statement of errors complained

of on appeal pursuant to Rule 1925(b). *See* Pa.R.A.P. 1925(b). On March 29, 2021, the trial court filed a Rule 1925(a) opinion in which it noted that Ramey failed to file a statement of errors,[3] but assumed that Ramey was appealing the denial of his suppression motion. Upon receiving the trial court's opinion, Ramey filed a motion to file a Rule 1925(b) statement *nunc pro tunc*. The Commonwealth did not object to Ramey's motion and the trial court granted it. The court filed an amended opinion on April 28, 2021, in which it addressed the issues raised in the *nunc pro tunc* Rule 1925(b) statement.[4]

Ramey raises one issue on appeal: "Whether the Suppression Court erred by denying the defense motion to suppress evidence from [his] unconstitutional seizure … on the basis that the police had a reasonable suspicion to institute the seizure and/or that the seizure was constitutionally permissible under the community caretaker doctrine?" (Ramey's Brief, at 4).[5]

_____

[3] Ramey's counsel represents that he did not receive a copy of the 1925(b) order.

[4] Because the trial court addressed the claims raised in the untimely Rule 1925(b) filing, we will address Ramey's appellate issue and need not address his allegation that he did not receive a copy of the trial court's order directing him to file a statement of errors. *See Commonwealth v. Brown*, 145 A.3d 184, 186 (Pa. Super. 2016), *appeal denied*, 165 A.3d 892 (Pa. 2017) ("[W]here the trial court addresses the issues raised in an untimely Rule 1925(b) statement, we … may address the issues on their merits.") (citation omitted).

[5] It is well-settled that:

*(Footnote Continued Next Page)*

## II.

Ramey argues that the traffic stop in this case was not supported by reasonable suspicion nor was it constitutional under the community caretaker doctrine because the police did not observe any traffic violations, the suspect vehicle had a different license plate number than that reported to Dispatch, and they had no specific and articulable facts that he needed medical assistance. (*See id.* at 11).

## A.

"A warrantless seizure is presumptively unreasonable under the Fourth Amendment, subject to a few specifically established, well-delineated exceptions." *Commonwealth v. Chase*, 960 A.2d 108, 113 (Pa. 2008); *see also Terry v. Ohio*, 392 U.S. 1 (1968) (same). Our jurisprudence delineates interactions between police and citizens into three levels.

_____

Our standard of review in addressing a challenge to a trial court's denial of a motion to suppress is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the prosecution prevailed in the suppression court, we may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the factual findings of the suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn from them are in error.

*Commonwealth v. Bell*, 871 A.2d 267, 271 (Pa. Super. 2005), *appeal denied*, 882 A.2d 1004 (Pa. 2005) (citations omitted).

> The first, a "mere encounter," does not require any level of suspicion or carry any official compulsion to stop or respond. The second, an "investigative detention," permits the temporary detention of an individual if supported by reasonable suspicion. The third is an arrest or custodial detention, which must be supported by probable cause.

***Commonwealth v. Lyles***, 97 A.3d 298, 302 (Pa. 2014) (citations omitted).

In this case, the Commonwealth concedes that Ramey was subject to a custodial detention requiring reasonable suspicion to be constitutional because once Trooper Shoeman activated his emergency lights and directed Ramey to stop his vehicle, Ramey was subject to an investigatory detention. ***See Commonwealth v. Livingstone***, 174 A.3d 609, 621 (Pa. 2017). The issue then becomes whether Trooper Shoeman had reasonable suspicion to stop Ramey's vehicle.

> An investigatory stop, which subjects a suspect to a stop and a period of detention but does not involve such coercive conditions as to constitute an arrest, requires a reasonable suspicion that criminal activity is afoot. Reasonable suspicion depends upon both the content of the information possessed by the police and its degree of reliability. Thus, quantity and quality of information are considered when assessing the totality of the circumstances. If information has a low degree of reliability, then more information is required to establish reasonable suspicion.

***Commonwealth v. Wimbush***, 750 A.2d 807, 811 (Pa. 2000) (citations omitted). An officer has "reasonable suspicion" of criminal activity or a violation of the Vehicle Code where he can articulate "specific observations which, in conjunction with reasonable inferences derived from these observations led him reasonably to conclude, in light of his experience, that criminal activity was afoot and the person he stopped was involved in that

- 7 -

activity." ***Commonwealth v. Fulton***, 921 A.2d 1239, 1243 (Pa. Super. 2007), *appeal denied*,934 A.2d 72 (Pa. 2007) (citation omitted).

Although Ramey correctly points out that he was never seen violating the Traffic Code prior to the stop in question, a violation is not necessary to establish the legality of a stop for the purposes of investigating a DUI:

> To have reasonable suspicion, police officers need not personally observe the illegal or suspicious conduct, but may rely upon the information of third parties, including "tips" from citizens. … While the reasonableness of official suspicion must be measured by what the officers knew before they conducted their search, Pennsylvania law...permits a vehicle stop based upon a radio bulletin if evidence is offered at the suppression hearing to establish reasonable suspicion.

***Commonwealth v. Barber***, 889 A.2d 587, 593-94 (Pa. Super. 2005) (citations and most quotation marks omitted). "For a stop to be valid, someone in the police department must possess sufficient information to give rise to reasonable suspicion. The officer with the reasonable suspicion, usually the dispatcher, need not convey all of this background information to the officer who actually effectuates the stop." ***Id.*** (citation and brackets omitted).

Trooper Shoeman testified at the suppression hearing that at approximately 3:00 A.M., Dispatch provided information that an individual had advised that a male was passed out in the driver's seat of a vehicle, hanging partially out of the open door. Although the bulletin did not provide the name of the informing witness, evidence was presented at the suppression hearing that it was the Sheetz manager. Although Trooper Shoeman did not personally observe this behavior and saw the vehicle drive out of the Sheetz

parking lot without incident, he located it approximately a mile away pulled off the road into the parking lot of a closed Weis Markets with its lights on and engine running. When police pulled behind the vehicle, it began to drive off.

Based on the foregoing, we conclude that Ramey's suspicious behavior, *i.e.*, passing out in the driver's side of his vehicle in the Sheetz parking lot at approximately 3:00 A.M., parking approximately one mile away in the parking lot of a closed grocery store, and pulling away upon seeing police approach, support the court's finding that Trooper Shoeman had reasonable suspicion to effectuate a stop of Ramey's vehicle. *See Bell*, 871 A.2d at 271.[6]

Moreover, even assuming *arguendo* that Trooper Shoeman lacked reasonable suspicion of DUI, he properly stopped Ramey's vehicle in his role as a public servant and community caretaker.

**B.**

Ramey argues that the public servant exception does not apply because there are no specific, articulable facts that would suggest he needed

---

[6] Ramey argues that any suspicion that could have arisen from the Sheetz manager's tip was negated because the license plate number provided by the Sheetz manager had some inverted numbers. (*See* Ramey's Brief, at 11); (Ramey's Reply Brief, at 5-7). This is not persuasive. As Trooper Shoeman testified, he observed the vehicle, which matched the color, make and model identified by the manager, both at the Sheetz and Weis Markets. Although the numbers were reordered on the license plate, the letters were exact. (N.T. Hearing, at 7, 10). We are not persuaded that the Sheetz manager's reordering of the numbers on the vehicle at 3:00 A.M. somehow "negat[ed] any suspicion that could have arisen from the tip." (Ramey's Reply Brief, at 7).

assistance other than the report that he was unconscious in the Sheetz parking lot. (**See** Ramey's Brief, at 21).

In **Livingstone**, 174 A.3d at 609, the Pennsylvania Supreme Court held:

> [I]n order for a seizure to be justified under the public servant exception to the warrant requirement under the community caretaking doctrine, the officer must point to specific, objective, and articulable facts which would reasonably suggest to an experienced officer that assistance was needed; the police action must be independent from the detection, investigation, and acquisition of criminal evidence; and, based on a consideration of the surrounding circumstances, the action taken by police must be tailored to rendering assistance or mitigating the peril.

**Livingstone**, 174 A.3d at 637. "We are not suggesting, however, that an officer's contemporaneous subjective concerns regarding criminal activity will preclude a finding that a seizure is valid under the community caretaking function." **Id.** at 636

In support of his argument that the community caretaking doctrine does not apply, Ramey relies on this Court's decision in **Commonwealth v. McQuaid**, 2019 WL 473667, unpublished memorandum, at *1 (Pa. Super. filed Feb. 7, 2019). (**See** Ramey's Brief, at 23-27).

We first observe that unpublished memoranda filed prior to May 1, 2019, have no precedential value and citing to them violates our Internal Operating Procedures. **See Commonwealth v. Olson**, 179 A.3d 1134, 1138 (Pa. Super. 2018), *aff'd*, 179 A.3d 1134 (Pa. 2019); P.S. Super. Ct. I.O.P. § 65.37(B). Without providing any legal authority, Ramey baldly maintains

- 10 -

that we should ignore the mandatory language of Internal Operating Procedure 65.37 because **McQuaid** was filed on February 7, 2019, only months before the May 1, 2019 date. We decline to do so. Moreover, **McQuaid**, although factually similar, is distinguishable.

In **McQuaid**, a police officer received a dispatch for an unconscious male in the driver's seat of his vehicle in a Wendy's Restaurant parking lot. Upon arriving at the scene two to three minutes later, the subject vehicle was no longer present. However, the officer observed a vehicle matching its description exiting a gas station across the street. The officer activated his overhead lights and stopped the vehicle to check on the driver's well-being based on the information in the dispatch. While speaking with the defendant, the police officer observed signs of intoxication and he ultimately arrested him for DUI. At no time did the officer observe any motor vehicle violations. The trial court denied the defendant's motion to suppress evidence seized as a result of the stop. **See McQuaid**, 2019 WL 473667, at *1.

On appeal, we found that the above evidence adduced at the suppression hearing did not support reasonable suspicion and that the public servant exception of the community caretaker doctrine did not apply because:

> Based on the [above facts], … any perceived reason to check on the well-being of an unconscious individual was nullified upon [the officer] observing that Appellant was conscious and driving without committing any motor vehicle violations. Simply stated, there were no facts that [the officer] could point to suggesting that Appellant was in need of assistance.

*Id.* at *4.[7]

Similarly, here, Trooper Shoeman had information from Dispatch that an individual was passed out and partially hanging out of the open door of his vehicle in the Sheetz parking lot. Upon reporting to the scene, he saw Ramey exit the Sheetz parking lot without committing any traffic violations. However, unlike in *McQuaid*, when the trooper located the subject vehicle ten minutes later, it was pulled off the road parked in the lot of a closed grocery store with the engine running and lights illuminated. It was only after Trooper Shoeman's vehicle pulled behind Ramey that he started to exit the Weis Markets lot.

These circumstances, "reasonably suggest to an experienced officer that assistance was needed." *Livingstone*, 174 A.3d at 636-37. As stated by the trial court, "[l]aw enforcement officers have a duty and an obligation to investigate situations where it is possible that someone is ill or not feeling well[.] … If an individual was having health problems where it would cause them to pass out and were attempting to get home, I would expect troopers to investigate." (N.T. Hearing, at 18-19). In other words, it was reasonable for Trooper Shoeman to investigate why Ramey, who had been unconscious

---

[7] *McQuaid* also found that the officer lacked reasonable suspicion. However, as described above, the facts are distinguishable where the incident occurred in the middle of the afternoon in that case and the officer did not see the defendant again pulled off to the side of the road in the parking lot of a closed business.

behind the wheel only approximately ten minutes before, would have pulled over to sit in his vehicle about one mile away in the parking lot of a closed grocery store, as this could signal possible health issues. While Ramey did start to drive away after the troopers' approach, under the totality of the circumstances, it was reasonable for Trooper Shoeman to investigate whether it was safe for Ramey to continue his drive.

Accordingly, based on the foregoing, we conclude that *McQuaid*, even if it were binding precedent, it is not persuasive because it is distinguishable, and the facts support the court's denial of Ramey's motion to suppress where Trooper Shoeman was acting in his role as a public servant and pursuant to his role as a community caretaker. *Bell*, 871 A.2d 267, 271.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/09/2021