J-S06026-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ISIAH A. ROBERSON | : | |
| | : | |
| Appellant | : | No. 2057 EDA 2023 |

Appeal from the Judgment of Sentence Entered February 27, 2023
In the Court of Common Pleas of Bucks County Criminal Division at
No(s): CP-09-CR-0002122-2022

BEFORE: DUBOW, J., McLAUGHLIN, J., and SULLIVAN, J.

MEMORANDUM BY McLAUGHLIN, J.: **FILED JUNE 11, 2024**

Isiah A. Roberson appeals from the judgment of sentence entered following his conviction for persons not to possess firearms, firearms not to be carried without a license, possession of marijuana, possession of drug paraphernalia, improper sun screening, and driving while operating privilege is suspended or revoked.[1] Roberson argues the court erred in denying his motion to suppress. We affirm.

In February 2022, following a traffic stop, Roberson was arrested and charged. He filed a motion to suppress, alleging the officer did not have "reasonable suspicion and/or probable cause to conduct a traffic stop of the vehicle" and the officers conducted an illegal warrantless search. Omnibus Pretrial Motion, filed July 28, 2022, at ¶¶ 12, 13-14. At the hearing on the

---

[1] 18 Pa.C.S.A. §§ 6105(a)(1), 6106(a)(1), 35 P.S. §§ 780-113(a)(31), 780-113(a)(32), 75 Pa.C.S.A. §§ 4524(e)(1), and 1543(a), respectively.

motion to suppress, Roberson alleged the police officer did not have reasonable suspicion to conduct the traffic stop; he did not argue that a probable cause standard applied to the stop. N.T., Nov. 21, 2022, at 8, 78. He further argued that the officers conducted an illegal search because his consent was not knowing and voluntary.

At the suppression hearing, Officer Smith testified that on February 11, 2022, while conducting patrol in full uniform and a marked police car, he observed a Lexus sedan with heavily tinted windows. *Id.* at 13. He testified the windows were tinted "all around, on the side and the rear" and that he could not see inside the vehicle, the number of people in the vehicle, who was driving, or any movements "from the back or the side." *Id.* at 14. Officer Smith testified he was one or two car lengths back when he made the observations, and when he walked up after he initiated the traffic stop, he was "right next to the vehicle, right behind it, and then right next to it." *Id.* He stated he was stopping the vehicle for a violation of Section 4524(e), governing windshield obstructions and wipers, which is a violation he would recognize when he saw it. *Id.* at 14-15.

Officer Smith testified that when he initiated the stop, he activated his emergency lights and sirens and the vehicle stopped. *Id.* at 16. He stated that Roberson was the only person in the vehicle. *Id.* at 17-18. Officer Smith testified that Roberson told him that Roberson's license had been suspended. *Id.* at 19. He further stated that inside the vehicle he saw a Wawa bag and "[i]nside that bag and right outside the bag" were two packages of what he

knew to be marijuana in plain view. *Id.* at 19-20. Officer Smith testified that Roberson said there was nothing else in the vehicle and, without being asked for consent, he twice said, "[Y]ou can check the car." *Id.* at 20. Officer Smith responded that he would check the vehicle when a back-up officer arrived. *Id.*

Officer Smith testified that during the stop Roberson made a telephone call, the officer did not physically touch Roberson or direct his movements prior to Roberson's telling him he could "check the car," and Roberson remained in the driver's seat. *Id.* at 21. Officer Smith testified that after Officer Dylan Gallagher arrived, he asked Roberson to step out of the vehicle and conducted a pat-down for weapons. *Id.* at 22. Officer Smith then searched the driver's seat area of the vehicle, and, while doing so, looked in the back seat, where he observed a firearm on the rear passenger floorboard. *Id.* at 22-23. He testified the handle was sticking up, the barrel was on the ground facing the back of the vehicle, "and it was position[ed] in the manner where if you are in the driver's seat, you can reach back and grab it with your hand or place it there." *Id.* He testified the firearm was in plain sight, with nothing covering it, but he could not see it when he approached the vehicle because of the window tint. *Id.* at 23-24. In the same area of the passenger-side floorboard, Officer Smith observed a yellow box of sandwich bags. *Id.* at 23. Officer Smith asked Roberson if he had a permit to carry a firearm, and Roberson responded that he did not. *Id.* at 24.

Officer Smith then impounded the vehicle and applied for a search warrant, which he received later that day. *Id.* at 29. During the search, the

officers found the firearm, marijuana, packaging related to narcotics, documentation that the car belonged to Roberson, and paperwork belonging to Roberson. *Id.* at 33.

Officer Smith testified he was wearing a body camera during the vehicle stop, and the video was admitted into evidence. *Id.* at 25-26. The video begins shortly before Officer Smith activated the lights and sirens, but the video does not show what Officer Smith saw while he was following the car, as the camera, because of its positioning, does not show outside the car while Officer Smith is seated. Rather, it shows the interior of the vehicle. After Officer Smith approached the vehicle, he is heard informing Roberson, "I pulled you over because your tint is so dark, man, especially in the back." Cmwlth. Exh. 3.

During cross-examination, Officer Smith testified that he did not ask Roberson to sign the consent to search form utilized by the police department and did not tell Roberson that Roberson did not have to consent to a search. N.T., Nov. 21, 2022, at 53, 56.[2]

At the conclusion of the hearing, the court made findings of fact and denied the motion. The findings included that "Officer Smith noticed that the vehicle had heavily tinted windows on the back and the side . . . such that it was not possible from those vantage points to see into the vehicle." *Id.* at 102. It found that Officer Smith conducted the stop due to the heavy tint. *Id.* at 102-03. The court found that Officer Smith observed what he believed to

_____

[2] Officer Gallagher also testified at the hearing.

be marijuana, and that Roberson indicated the marijuana was the only contraband in the vehicle. *Id.* at 104. The court then pointed out that Officer Smith started "speaking with the defendant about the vehicle, which [had] this unusual paper plate on the back, and they had a discussion concerning the validity of the vehicle registration." *Id.* The court found that "after that conversation," Roberson "indicated to Officer Smith there's nothing there. You can check the car," which the court found was a "spontaneous utterance by [Roberson] giving the officer consent to check the car." *Id.*

The court further found that "[s]ome time later during the encounter at the car before Officer Smith left the area of the passenger's side door, [Roberson] again spontaneously and after there had been discussion both about the vehicle as well as the marijuana in the vehicle, indicated that . . . Officer Smith could again check the car." *Id.* The court found, "This statement and permission given to check the vehicle was not given in response to any request to search the car by Officer Smith. This was a second spontaneous offer permitting Officer Smith to check the car." *Id.* at 104-05.

The court also determined that while waiting for back-up to arrive, "Roberson remained seated in the driver's seat" and "appeared to be eating, perhaps a sandwich or some food at that time, was making a cellular telephone call." *Id.* It found that "Officer Smith did not interrupt any of these things or make any kind of demand that this activity stop, but allowed [Roberson] to sit in the car and essentially pursue this activity without interruption." *Id.* at 105. The court further found that the "entire incident from the time of the car stop

to the time that Mr. Roberson was handcuffed was approximately seven minutes." *Id.* at 106.

The trial court concluded the traffic stop was lawful:

> the stop of the motor vehicle was legal pursuant to an observation that it had heavily-tinted windows in the back and side, and later observations of those windows after the stop by Officer Smith confirmed that those windows were heavily tinted on the back and side. They were certainly far more reflective than see through.

*Id.* at 107.

The court determined that, "based on three statements made by Roberson, that there was a valid consent search of the motor vehicle. Spontaneously, on [two] occasions [Roberson] told Officer Smith that he could check the car, and . . . this was not done in response to any request for consent." *Id.* at 107-08. The court further pointed out that, "after [Roberson] was out of the vehicle, he spontaneously uttered that the police could pop the truck of the car . . . to further search the vehicle." *Id.*[3] at 108. The court thus found valid consent to search the vehicle. It acknowledged that Roberson had not been presented with the consent to search form or informed of his rights before the search. It explained that therefore the "search may not have been pursuant to Bensalem Township Police Department procedures and protocol," but that "pursuant to Superior Court and Supreme Court guidance . . . [it] was a valid consent search." *Id.* at 108-09.

---

[3] The body camera footage supports these findings.

Roberson proceeded to a jury trial and was convicted of persons not to possess firearms. The trial court found him guilty of the remaining offenses. In February 2023, the trial court sentenced Roberson to three to eight years' imprisonment for persons not to possess firearms; 20 to 50 months' imprisonment for firearms not to be carried without a license, concurrent to the sentence for persons not to possess; no further penalty on the drug convictions; and statutory fines and costs for the convictions under the Motor Vehicle Code.

Roberson filed a post-sentence motion, which the court denied. Roberson filed a timely notice of appeal.

Roberson raises the following issues:

> A. Did the trial court err in denying [Roberson's] motion to suppress where its factual conclusion that police observed side window tint prior to initiating a traffic stop was not supported by the record, and therefore the traffic stop was not supported by reasonable suspicion or probable cause?
>
> B. Did the trial court err in denying [Roberson's] motion to suppress where [Roberson's] consent to search was not voluntarily given?

Roberson's Br. at 8.

When reviewing the denial of a motion to suppress, we determine "whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct." **Commonwealth v. McMahon**, 280 A.3d 1069, 1071 (Pa.Super. 2022) (citation omitted). Where the Commonwealth prevailed on the motion, "we may consider only the evidence of the Commonwealth and so much of the evidence for the defense

- 7 -

as remains uncontradicted." *Id.* (citation omitted). "Our scope of review of suppression rulings includes only the suppression hearing record and excludes evidence elicited at trial." *Id.* (citation omitted). Where the record supports the suppression court's factual findings, we will only reverse if there is an error in the legal conclusions drawn from those facts. *Id.*

In his first issue, Roberson argues that because the stop was based on conduct that did not require further investigation, the police officer needed probable cause to conduct the stop. He acknowledges that he conducted a reasonable suspicion analysis in support of his motion to suppress before the trial court and states the court concluded Officer Smith had reasonable suspicion for the stop. He maintains, however, that appellate courts "are not bound to consider only legal arguments raised at the trial level; instead appellate courts are 'free to consider any issue properly preserved on any legal grounds [the court] find[s] appropriate.'" Roberson's Br. at 13 (quoting *Commonwealth v. Baer*, 654 A.2d 1058, 1062 (Pa.Super. 1994)) (alteration in original). He maintains he preserved the issue of whether the stop was supported by the requisite level of suspicion in his motion, and this Court should apply the correct, probable cause standard of review.

In Pennsylvania, a person cannot drive a vehicle that has any material that does not permit a person to see inside the vehicle "through the windshield, side wing, or side window":

> (1) No person shall drive any motor vehicle with any sun screening device or other material which does not permit a

- 8 -

person to see or view the inside of the vehicle through the windshield, side wing or side window of the vehicle.

75 Pa.C.S.A. § 4524(e)(1).

We must first address whether an officer requires probable cause or reasonable suspicion to initiate a traffic stop based on a violation of Section 4524(e)(1). "The issue of what quantum of cause a police officer must possess . . . to conduct a vehicle stop based on a possible violation of the Motor Vehicle Code is a question of law," and therefore our scope of review is plenary and our standard of review is *de novo*. **Commonwealth v. Harris**, 176 A.3d 1009, 1019 n.3 (Pa.Super. 2017).

Traffic stops based on a reasonable suspicion "either of criminal activity or a violation of the Motor Vehicle Code under the authority of Section 6308(b) must serve a stated investigatory purpose." **Id.** at 1019 (quoting **Commonwealth v. Feczko**, 10 A.3d 1285, 1291 (Pa.Super. 2010) (*en banc*)). Where an officer conducts a stop based on an observed violation of the Vehicle Code or otherwise non-investigable offense, the officer must have probable cause to make a constitutional vehicle stop. **Id.** A "police officer has probable cause to stop a motor vehicle if the officer observes a traffic code violation, even if it is a minor offense." **Id.** (citation omitted).

In **Commonwealth v. Prizzia**, this Court found that prior cases of this Court applied a probable cause standard to determine whether the stop for a window tint violation was proper. 260 A.3d 263, 268 (Pa.Super. 2021). It noted that in **Commonwealth v. Postie**, 110 A.3d 1034 (Pa.Super. 2015), although the Court set forth the reasonable suspicion standard, it affirmed the

trial court's determination that probable cause existed. ***Prizzia***, 260 A.3d at 267-68. It pointed out that ***Harris*** also applied the probable cause standard and found that the officer had probable cause to stop the vehicle where the windows were so dark that the officer could not see inside and no further investigation was needed. ***Prizzia***, 260 A.3d at 268. The ***Prizzia*** court, however, did not conclude that the probable cause standard would apply to all stops based on a possible window-tint violation. ***Id.*** at 269 n.2. Rather, it stated the decision "should not be read as precluding application of a reasonable suspicion standard to a stop for a window-tint violation, if the specific facts of the case demonstrate that an investigatory purpose was served by the stop." ***Id.***

At the hearing, Roberson argued that Officer Smith did not have reasonable suspicion to conduct the traffic stop. He did not argue that a probable cause standard applied. He therefore he waived his probable cause argument on appeal, particularly as this Court has not ruled that probable cause always is needed for a stop based on Section 4524(e)(1). ***Commonwealth v. Colavita***, 993 A.2d 874, 891 (Pa. 2010) (court should not reach claims not raised below and appellate courts cannot review trial court on basis not raised below).[4] We will therefore apply the reasonable suspicion standard on appeal.

_____

[4] Moreover, in his 1925(b) statement, Roberson argued that the court "erred in denying [Roberson's] Motion to Suppress where the traffic stop was not
*(Footnote Continued Next Page)*

Reasonable suspicion to conduct the stop exists where the officer "articulate[s] specific observations which, in conjunction with reasonable inferences derived from those observations, led him reasonably to conclude, in light of his experience, that criminal activity was afoot and that the person he stopped was involved in that activity." **Postie**, 110 A.3d at 1039 (citation omitted).

Roberson argues that under either the probable cause or reasonable suspicion standard, the stop was not supported. Roberson maintains that Officer Smith's body camera footage contradicts the trial court's factual finding that the officer observed heavily tinted rear and side windows prior to initiating the traffic stop. He maintains that Officer Smith testified that before the stop he was one or two car lengths behind Roberson's car and then approached the car, walking behind and next to it. He maintains that this testimony does not support a finding that Officer Smith observed side window tint before conducting a stop.

Section 4524(e)(1) prohibits sun screening that does not permit a person to see inside the vehicle "through the windshield, side wing or side window of the vehicle." 75 Pa.C.S.A. § 4524(e)(1). This section does not prohibit sun screening on the rear window of the vehicle. **See Commonwealth v. Gonzalez**, 413 MDA 2019, 2019 WL 4274043, at *4

---

supported by reasonable suspicion and/or probable cause." Pa.R.A.P. 1925(b) statement, filed Aug. 29, 2023. He did not argue the trial court applied the wrong standard when determining whether to grant the motion.

(Pa.Super. Sept. 9, 2019) (unpublished memorandum); **_Compare_** 75 Pa.C.S.A. § 4524(e)(1) (addressing sun screening on the "windshield, side wing or side window"), **_with_** 75 Pa.C.S.A. § 4524(b) (addressing obstruction on side and rear windows). Therefore, to conduct a stop based on a violation of Section 4524(e)(1) based on reasonable suspicion, the officer would need reasonable suspicion that the vehicle had tinted side windows that prevented a person from viewing inside the vehicle.

Here, the court did not err in finding Officer Smith had reasonable suspicion to stop the vehicle. The court concluded "the stop of the motor vehicle was legal pursuant to an observation that it had heavily-tinted windows in the back and side, and later observations of those windows after the stop by Officer Smith confirmed that those windows were heavily tinted on the back and side. They were certainly far more reflective than see through." N.T., Nov. 21, 2023, at 107. In its 1925(a) opinion, the court noted this finding and concluded Officer Smith had reasonable suspicion to conduct the stop. Trial Court Opinion, filed Oct. 13, 2023, at 7. The record supports the court's factual findings and it did not err in finding the stop was supported by reasonable suspicion where Officer Smith testified that the car had tinted side windows.

Furthermore, even if we were to conclude Roberson did not waive his argument that the probable cause standard should apply,[5] we would conclude no error occurred.

Officer Smith testified, and the trial court found, that he initiated the stop because of the heavily tinted rear and side windows. The fact that Officer Smith's view of the side window cannot be determined from the body camera video does not establish that Officer Smith did not observe heavily-tinted side windows before he stopped the vehicle. The video footage simply does not contradict his testimony. Further, Officer Smith's testimony that he was one or two car lengths behind Roberson's vehicle does not establish that he could not have observed the side windows while following the vehicle. Here, the trial court credited Officer Smith's testimony, which supported its determination that he properly stopped the vehicle for tinted side windows in violation of Section 5424(e)(1).

In his second issue, Roberson argues the court erred in denying his motion to suppress because his consent to the search was not voluntary. He maintains that applying the factors used to determine whether consent was coerced shows that his consent was not voluntary. Roberson notes Officer Smith's retention of his identification and documents, and his testimony that Roberson was not free to leave while he was asking Roberson about the

_____

[5] Officer Smith testified that he conducted a stop due to a violation of Section 4524(e)(1). He did not state that he needed to investigate whether a violation of Section 4524(e)(1) occurred.

- 13 -

vehicle's ownership; Officer Smith's leaning into the vehicle and questioning him, after activating his lights and siren to initiate the stop; Officer Smith's not asking Roberson to complete a consent to search form, contrary to department policy; and Officer Smith's not telling Roberson that he did not have to consent to the search. Roberson argues that "the fact that Officer Smith did not explicitly request consent to search does not mean that the eventual search was voluntary and consensual." Roberson's Br. at 24. He maintains that Officer Smith's conduct and statements demonstrate that Roberson's statements were not spontaneous or voluntary. *Id.* at 24-26 (noting Officer Smith testified he told Roberson that the officer was a reasonable person and that cooperation goes a long way).

"[A] search conducted without a warrant is unreasonable and unconstitutional unless an established exception to the warrant requirement applies." *Commonwealth v. Carmenates*, 266 A.3d 1117, 1124 (Pa.Super. 2021) (*en banc*). "To establish a valid consensual search, the Commonwealth must first prove that the consent was given during a legal police interaction." *Id.* (quoting *Commonwealth v. Bell*, 871 A.2d 267, 273 (Pa.Super. 2005)). "Next, the Commonwealth must prove the consent was given voluntarily." *Id.* (citation omitted). For consent to be valid, "the consent must be the product of an essentially free and unrestrained choice—not the result of duress or coercion, express or implied, or a will overbourne—under the totality of the circumstances." *Id.* (quoting *Commonwealth v. Quiles*, 166 A.3d 387, 391 (Pa.Super. 2017)).

To determine whether consent is valid when provided close in time to a traffic stop, courts consider the following factors:

> 1) the presence or absence of police excesses; 2) whether there was physical contact; 3) whether police directed the citizen's movements; 4) police demeanor and manner of expression; 5) the location of the interdiction; 6) the content of the questions and statements; 7) the existence and character of the initial investigative detention, including its degree of coerciveness; 8) "the degree to which the transition between the traffic stop/investigative detention and the subsequent encounter can be viewed as seamless, ... thus suggesting to a citizen that his movements may remain subject to police restraint,"; 9) the "presence of an express admonition to the effect that the citizen-subject is free to depart is a potent, objective factor;" and 10) whether the citizen has been informed that he is not required to consent to the search.

*Id.* (quoting *Commonwealth v. Moyer*, 954 A.2d 659, 665 (Pa.Super. 2008) (*en banc*)). Further, "knowledge of the right to refuse to consent to the search is a factor to be taken into account, [but] the Commonwealth is not required to demonstrate such knowledge as a prerequisite to establishing voluntary consent." *Commonwealth v. Strickler*, 757 A.2d 884, 901 (Pa. 2000).

Here, the trial court found that under the totality of the circumstances, the consent was voluntary, noting Officer Smith was cordial and uncoercive, the only physical contact was a pat-down, and the questioning was reasonable and appropriate:

> At the suppression hearing, Officer Smith testified that [Roberson] told him that he could check the vehicle without prompting or a request being made. N.T. 11/21/2023 at p. 104. The Court examined many of the well-settled factors in considering the voluntariness of the consent. The undersigned found that Officer Smith was having calm

discussions with [Roberson] regarding the registration of the vehicle, and he did not check the vehicle until securing backup to come to the scene. ***Id.***

Furthermore, we found that Officer Smith was cordial and uncoercive such that he allowed [Roberson] to finish his sandwich and make a phone call during the stop. ***Id.*** at 105. Furthermore, we found that the Commonwealth established that the only physical contact between [Roberson] and Officer Smith was the pat-down conducted when Officer Smith directed [Roberson] to get out of the car. ***Id.*** at 106.

Thus, upon consideration of the totality of the circumstances, it was clear to the undersigned that the facts established the voluntariness of [Roberson's] consent. We found that no coercion or prompting to search the vehicle occurred during the traffic stop and that Officer Smith was cordial throughout the interaction. In addition, we found that Officer Smith's questioning of [Roberson] was reasonable and appropriate. Accordingly, we determined that [Roberson's] consent to the search was freely and voluntarily given. ***Id.*** at 107-108.

Trial Ct. Op. at 9.

The record supports the trial court's factual findings and it did not err in finding that Roberson voluntarily consented to the search of the car. Prior to the search, Roberson twice said, without being asked, that Officer Smith could search the car. After the search, Roberson volunteered that the officers could look in trunk, which they did not do. Officer Smith did not use coercion and his questions were reasonable and related to the stop.

Judgment of sentence affirmed.

- 16 -

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 6/11/2024